IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-00537-WYD-KLM

JACOB IND,

     Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS;
SUSAN JONES;
MARY NELL MCCORMICK;
MCCAIN HILDEBRAND;
RENE OLIVETT;
JAMES W. BROWN; and
ANTHONY DECESARO,

     Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on **Defendants' Motion to Dismiss Final Amended Complaint** [Docket No. 50; Filed October 9, 2010] (the "Motion").  Plaintiff responded [Docket No. 52; Filed October 28, 2009], Defendant replied [Docket No. 59; Filed November 24, 2009], and the Motion is ripe for resolution.  For the reasons set forth below, I respectfully **RECOMMEND** that the Motion be **GRANTED in part** and **DENIED in part**.

**I.     Factual and Procedural Background**

     Plaintiff, who is proceeding *pro se*, is currently incarcerated at the Colorado State Penitentiary ("CSP").  CSP is a maximum-security/administrative segregation facility and is classified as "Level V," the highest security level within the Colorado Department of Corrections ("CDOC") system.  *See* Colo.Rev.Stat. § 17-1-104.3.

Plaintiff identifies himself as a follower of "Christian Separatism," a group within the larger religion known as "Christian Identity." *See* Final Amended Complaint, Docket No. 44, ¶ 2; *Response* [#52] at 1. This religion has been described as "rest[ing] upon White Supremacy principles, teaching that all other races and religions are inferior." *Ind v. Wright*, 52 Fed. App'x 434, 436 (10th Cir. 2002); *see also Rooks v. Zavares*, No. Civ. 99-B-631, 2001 WL 34047959, at *1 (D. Colo. Jan. 24, 2001) (describing beliefs of Christian Identity followers). The instant lawsuit arises from Plaintiff's claims that CDOC policies unconstitutionally inhibit his ability to practice his religion and that he has been given a security classification because of his beliefs.

Plaintiff alleges violations of federal constitutional law and brings this action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq.* He also alleges violations of state constitutional law and COLO. REV. STAT. § 17-42-101. Specifically, in his Final Amended Complaint, Plaintiff asserts five claims for relief:

> Claim One : The ban on religious correspondence courses at CSP violates RLUIPA, the Fourteenth Amendment of the [United States] Constitution, § 17-42-101 CRS, and the Colorado Constitution Art. II, Secs. 3 & 4. *Complaint* [#44] at 4.
>
> Claim Two: The book limits imposed at CSP violate RLUIPA, the Fourteenth Amendment of the [United States] Constitution, § 17-42-101 CRS, and the Colorado Constitution Article II, Secs. 3 & 4. *Complaint* [#44] at 5.
>
> Claim Three: The magazine limits imposed at CSP violate RLUIPA, the Fourteenth Amendment of the [United States] Constitution, § 17-42-101 CRS, and the Colorado Constitution Art. II, Secs. 3 & 4. *Complaint* [#44] at 6.
>
> Claim Four: Denying the Plaintiff an opportunity to take communion violates the First and Fourteenth Amendments of the [United States] Constitution, RLUIPA, § 17-42-101 CRS, and Art. II, Sec. 4 of the Colorado Constitution.

*Complaint* [#44] at 10.

> Claim Five: Classifying the Plaintiff as a Security Threat Group ("STG") member based upon his political and religious beliefs violate [sic] the First and Fourteenth Amendments to the [United States] Constitution, RLUIPA, § 17-42-101 CRS, and Art. II, Sec. 4 of the Colorado Constitution. *Complaint* [#44] at 11.

*Complaint* [#44] at 4-12.  In relevant part, he describes the relief he requests thus:

> U.S. Constitutional Violations: Injunctive and Declatory [sic] relief from Defendants in both their individual and official capacities. Punative [sic] and nominal damages in the Defendants' individual capacities.

> State Law Violations: Declatory [sic] relief in the Defendants' official and individual capacities.

> 42 U.S.C. § 2000cc RLUIPA: Injunctive, Declatory [sic], nominal, and punative [sic] damages in the Defendants' individual and official capacities plus compensatory damages to replace the 13 books the Plaintiff had to mail out.

*Id.* at 8.

Plaintiff brings these claims against CDOC as well as individual Defendants Susan Jones, Mary Nell McCormick, McCain Hildebrand, Rene Olivett, James W. Brown, and Anthony DeCesaro ("Individual Defendants").  All Individual Defendants are employees of Defendant CDOC.  Although Plaintiff does not specify names of Individual Defendants in the general statements of his claims, he does use names in the factual allegations specific to each claim.  Claim One names Defendants Jones, McCormick, and Hildebrand; Claim Two names Defendants Jones, Olivett, and Hildebrand; Claim Three names Defendants Jones, Brown, and Hildebrand; Claim Four names Defendants McCormick, Hildebrand, and DeCesaro; and Claim Five names no Individual Defendant.  All claims are also brought against Defendant CDOC.

In the instant Motion, Defendants request that the Court dismiss all claims pursuant

to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.[1]

## II.    Legal Standard

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009). Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff

---

[1]Plaintiff previously brought a lawsuit in which he alleged that various CDOC administrative regulations affected his ability to practice his religion. *See Ind v. Wright*, 44 Fed. App'x 917 (10th Cir. Aug. 14, 2002), on rehearing *en banc* in part, *Ind v. Wright*, 52 Fed. App'x 434 (10th Cir. Nov. 25, 2002). Defendants do not argue that the prior case in any way affects the Court's resolution of the instant Motion.

could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). However, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Ashcroft*,129 S. Ct. at 1949 (citation omitted).

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## III.  Analysis

## A.  Plaintiff's Federal Law Claims

### 1.  Scope of Relief Available

The Court first clarifies the scope of relief available to Plaintiff as a matter of law

pursuant to 42 U.S.C. § 1983 and RLUIPA.

        a.     Section 1983 Claims

42 U.S.C. § 1983 permits claims against state employees for monetary damages arising from violations of the U.S. Constitution.  However, a suit against state employees in their official capacities is considered to be a suit against the state itself.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Defendant CDOC is a state agency, *see* Colo.Rev.Stat. §§ 24-1-128.5 and 17-1-101, and any suit against it and its employees in their official capacities is considered a suit against the state of Colorado.  The Eleventh Amendment protects states and their agents from suit in their official capacities.  *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59 (10th Cir. 2000).  Further, "[n]either states nor state officers sued in their official capacity are 'persons' subject to suit under section 1983." *Duncan v. Gunter*, 15 F.3d 989, 991 (10th Cir. 1994).  Accordingly, to the extent that Plaintiff makes any constitutional claim under section 1983 against Defendant CDOC or against the Individual Defendants in their official capacities, his claims must be dismissed.

However, section 1983 does provide for compensatory and punitive damages for violations of federal law by state employees in their individual capacities. *See generally Griffith v. State of Colo., Div. Of Youth Servs.*, 17 F.3d 1323, 1327 (10th Cir. 1994) (citations omitted).  Plaintiff is not entitled to compensatory damages for mental or emotional harm.  *See generally Perkins v. Kansas Dept. of Corr.*, 165 F.3d 803, 808 n.6 (10th Cir. 1999) (citing Prison Litigation Reform Act ("PRLA"), 42 U.S.C. § 1997e(e)).  He may nevertheless be able to state a section 1983 claim for nominal damages.  *Id.*

Plaintiff does not assert a claim for compensatory damages based on any claim of physical injury, nor does he assert any emotional injury in his Complaint.  Rather, Plaintiff

seeks compensatory damages for the thirteen books that allegedly were confiscated by Defendants. *See Complaint* [#44] at Claim Two, ¶ 3. To the extent that he alleges Defendants negligently took his property, damages are not available because the law does not provide compensatory damages for negligent loss of property. *See Daniels v. Williams*, 474 U.S. 327, 328-31 (1986). Nor does section 1983 provide a remedy for any unauthorized, intentional destruction of property, provided that the state provides a meaningful post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Durre v. Dempsey*, 869 F.2d 543, 545-48 (10th Cir. 1989). Colorado state law does provide such a remedy, and Plaintiff does not allege otherwise. *See* COLO.REV.STAT. § 24-10-118 (waiving immunity for public employees for "willful and wanton" tort actions); *Ali v. Reeves*, 232 Fed. App'x 777, 779 (10th Cir. 2007) (noting that 24-10-118 is an "adequate post-deprivation remedy" for CDOC employee's unauthorized taking of plaintiff's property). However, section 1983 provides a remedy for deprivation of property pursuant to "an affirmatively established or de facto policy, procedure, or custom." *Gilliham v. Shillinger*, 872 F.2d 935, 939-40 (10th Cir. 1989). To the extent Plaintiff has made such a claim for compensatory damages based upon deprivation of property pursuant to a policy, it is considered below. In summary, Plaintiff may have viable section 1983 claims for nominal and punitive damages arising from the constitutional violations alleged and a claim for compensatory damages for the alleged deprivation of property pursuant to a policy.

   b. RLUIPA claims

RLUIPA provides for suits only against "governments," not against individuals. *See* 42 U.S.C. § 2000cc-2(a). Courts interpreting RLUIPA have found that therefore RLUIPA does not create a cause of action against individuals, and Plaintiff's RLUIPA claims against

Defendants in their individual capacities therefore fail as a matter of law. *See Boles v. Neet*, 402 F.Supp.2d 1237, 1240 (D. Colo. 2005); *see Hamlin v. Smith*, No. 07-cv-01058-EWN-KMT, 2008 WL 4210795, at *6 (D. Colo. Sept. 10, 2008) (citing *Boles*, 402 F.Supp.2d at 1240); *Grady v. Holmes*, No. 07-cv-02251-EWN-CBS, 2008 WL 3539274, at *3 (D. Colo. Aug. 12, 2008) (citations omitted); *Kay v. Friel*, No. 06-cv-23-TS, 2007 WL 29556, at *3 (D. Utah Jan. 26, 2007) (collecting cases)*; see also Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 2007); *Lovelace v. Lee*, 472 F.3d 174, 192 (4th Cir. 2006). Nor does RLUIPA allow for suits for damages against governments; the only relief it provides is injunctive and declaratory relief. *See Grady*, 2008 WL 3539274, at *3 (concluding that RLUIPA does not include waiver of states' Eleventh Amendment immunity from damages suit); *Kay*, 2007 WL 29556, at *3 (finding that courts interpreting RLUIPA have found that it provides only injunctive relief against a government or individual officer in his official capacity). *But see Ahmad v. Furlong*, 435 F.3d 1196 (10th Cir. 2006) (considering whether Defendants adequately raised qualified immunity defense to claims, including RLUIPA claim, without addressing whether such defense appropriate because RLUIPA allowed claims against individuals). Accordingly, Plaintiff's only viable RLUIPA claims are against Defendants in their official capacities (and, redundantly, against Defendant CDOC) for injunctive and declaratory relief.

Because the Court concludes that Plaintiff may state potentially viable claims for nominal and punitive damages and injunctive relief against Individual Defendants in their individual capacities pursuant to section 1983, for compensatory damages as to his section 1983 claim for deprivation of property, and for injunctive relief pursuant to RLUIPA against Individual Defendants in their official capacities and Defendant CDOC, I evaluate those

claims under Rule 12(b)(6) below.

      2.    <u>Section 1983 Claims</u>

      a.    Lack of Personal Participation

Defendants move to dismiss the section 1983 claims because Plaintiff has not alleged sufficient facts to demonstrate their personal participation in the claimed unconstitutional conduct. Evidence of a party's personal participation in an alleged constitutional violation is essential to proceeding with a section 1983 claim against that party. *See Fotte v.* Spiegel, 118 F.3d 1416, 1423-24 (10th Cir. 1997); *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976). An affirmative link must exist between the alleged constitutional violation and a defendant's participation, control, or direction. *Bennett*, 545 F.2d at 1262-63; *see also Winslow v. Stanley*, No. 06-cv-02256-ZLW, 2007 WL 4268961, at *6 (D. Colo. Nov. 28, 2007). Furthermore, general, conclusory allegations, without supporting factual averments, are insufficient to state a constitutional claim against a defendant. *See Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996). Instead, "to state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

In Claims One, Two, Three, and Four,[2] Plaintiff alleges that Defendant Jones,

---

[2]Claim Five does not mention Individual Defendants. Similarly, in Claim Two, Plaintiff attempts to allege a Fourteenth Amendment claim for deprivation of thirteen books and seeks compensatory damages for their loss. He does not name any Individual Defendant in connection with the deprivation of the books, and the section 1983 claim therefore fails for lack of personal participation. To the extent that either claim states a claim for a constitutional violation by Defendant CDOC, that claim is barred by the Eleventh Amendment, as discussed in Section IIIA(1)(a), *supra*. Furthermore, as Plaintiff does not allege destruction of property, it is not clear that specific allegations as to the exact individual who took Plaintiff's books would cure the defects in Plaintiff's claim for compensatory damages. *See Searcy v. Simmons*, 299

allegedly Warden of CSP, is responsible for the policies at issue and that the other Defendants denied his grievances relating to application of those policies. Plaintiff further alleges that Defendants knew or should have known that the policies are unconstitutional.

Defendants Jones's alleged responsibility for prison policies is not a sufficient link between the alleged unconstitutional conduct and Plaintiff's claimed harm. In *Whitington v. Ortiz*, 307 Fed. App'x 179, 190-91 (10th Cir. 2009), the court dismissed claims against the Executive Director of CDOC because plaintiff's allegations "rest[ed] almost entirely on the premise that [defendant] was responsible for regulations which [plaintiff] claim[ed] [were] unconstitutional and which, as applied, infringed [plaintiff's] constitutional rights." 307 Fed. App'x at 190. The court concluded that plaintiff's claim failed because he lacked standing to sue in an "attempt to re-regulate the entire CDOC system," the regulations were not clearly unconstitutional on their face, and plaintiff "fail[ed], except for conclusory allegations, to sufficiently allege direct personal participation by [defendant] in [plaintiff's] claimed injury." *Id.* at 191. For the same reasons, Plaintiff's claims against Defendant Jones fail.

Similarly, Plaintiff makes no allegations that establish an affirmative link between Defendants' denials of Plaintiff's grievances and the alleged deprivation of constitutional rights. "[T]he denial of grievances alone is insufficient to establish personal participation in the alleged constitutional violations." *Whitington*, 307 Fed. App'x at 193 (quoting *Larson v. Meek*, 240 Fed. App'x 777, 780 (10th Cir. 2007)); *see also Arocho v. Nafziger*, No. 09-

_____

F.3d 1220, 1228 (10th Cir. 2002) (quoting *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002)) ("It is well-settled that '[w]hile an inmate's ownership of property is a protected property interest that may not be infringed without due process, there is a difference between the right to own property and the right to possess property while in prison.'").

1095, 2010 WL 681679, *10 (10th Cir. March 1, 2010) (citing *Whitington*, 307 Fed. App'x at 193) (noting that the Tenth Circuit "has repeatedly held, albeit in unpublished decisions" that participation in grievance process alone is insufficient for § 1983 liability). Further, to the extent that Plaintiff asserts that these Defendants are liable as supervisors for alleged constitutional harms due to their participation in the grievance process, mere participation in the grievance process, without more, is also an insufficient basis for establishing supervisory liability. *Boles v. Dansdill*, No. 05-cv-01661-PSF-CBS, 2007 WL 2770473, *4 (D. Colo. Sept.20, 2007); *see also Coates v. Sheahan*, No. 94-cv-6107, 1995 WL 430950, *2 (N.D. Ill. July 18, 1995) (holding that grievances submitted to a supervisory official are insufficient to establish the official's personal participation in a constitutional violation). The "mere involvement of processing a grievance at an administrative level does not establish the affirmative link required to establish supervisor liability for an employee's conduct." *Boles v. Dansdill*, 2007 WL 2770473, *4 (citing *Johnson v. G.E.O./Lawton Corr. Facility*, No. Civ-04-1467-C, 2005 WL 2739212, at *1 (W.D. Okla. Oct. 24, 2005)); *Davis v. Ark. Valley Corr. Facility*, 99 Fed. App'x 838, 843 (10th Cir. 2004) (sending "correspondence [to the warden] outlining [a] complaint . . . without more, does not sufficiently implicate the [supervisory official] under § 1983"). To hold a supervisory prison official liable on the basis of communications he received, "would be to hold any well informed [prison official] personally liable for damages flowing from any constitutional violation occurring at any jail within that [official's] jurisdiction. . . . [S]uch a broad theory of liability is inconsistent with the personal responsibility requirement for . . . a section 1983 action." *Crowder v. Lash*, 687 F.2d 996, 1005-06 (7th Cir. 1982).

        b.    Qualified Immunity

In Claim Four, Plaintiff asserts a violation of the First Amendment guarantee of freedom of religion against Defendant McCormick, by alleging that she unlawfully denied Plaintiff's request to take communion individually in his cell.  Unlike the allegations in the claims considered above, Plaintiff here alleges some direct action by Defendant McCormick:

> Defendant McCormick, as Programs Manager, specifically denied Ind the opportunity to take communion when he requested to be able to and then denied his step 1 grievance on the issue after being made aware of the relevant clearly established law, thereby refusing to remedy the violation of Ind's rights. Her justification for doing so was that communion is listed as a group practice and cannot be accommodated as an individual practice.

*Complaint* [#44] at 10-11.

"In order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry.  First, the prisoner-plaintiff must first show that a prison regulation 'substantially burdened ... sincerely-held religious beliefs.'" *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)).  "Consequently, '[t]he first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held.'" *Id.* (quoting *Snyder v. Murray City Corp.*, 124 F.3d 1349, 1352 (10th Cir. 1997)).  "Second, prison officials-defendants may 'identif[y] the legitimate penological interests that justif[ied] the impinging conduct.'"  *Id.* (quoting *Boles v. Neet*, 486 F.3d at 1182).  The Court then balances the factors articulated in *Turner v. Safely*, 482 U.S. 78 (1987), to evaluate whether the regulation is reasonable.  These factors are:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the

12

exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Id.* at 1219 (quoting *Boles v. Neet*, 486 F.3d at 1181).

Plaintiff apparently is challenging CDOC regulations and/or policies which classify communion in the Christian Identity religion as a group practice and do not provide for it to be accommodated as an individual practice.[3]  Plaintiff does not seek a group communion, but rather permission to partake in an individual communion in his cell.  Plaintiff also complains that he does not have access to one-hundred percent grape juice and unleavened bread, which he alleges are necessary for him to take communion.[4]  In response to Plaintiff's "step 3 grievance," Plaintiff states that Defendant DeCesaro "suggested to the Plaintiff that he attempt to have the regulations recognize individual communion via an [internal request] form."  *Complaint* [#44] at Claim Four, ¶ 9.  Plaintiff complains that any such request would "take[] well over a year to be considered."  *Id.*

Defendant McCormick asserts that she is entitled to qualified immunity as to this claim, and the Court agrees.  Government officials are entitled to qualified immunity from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person in their position would have known.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity also offers

_____

[3] To the extent that Plaintiff is not challenging a regulation and/or policy but instead is challenging an isolated incident, he fails to state a claim for relief.  *See Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009) (finding that allegation of isolated incident of negligence would not violate an inmate's First Amendment right to free exercise of religion).

[4] Defendants interpreted Plaintiff's claim as a claim for access to grape juice and unleavened bread at no charge.  *See Motion* [#50] at 10-11.  Plaintiff clarifies in his response that his claim is based on alleged denial of the opportunity to buy the appropriate juice and bread at the prison canteen.  *See Response* [#52] at 17.

protection from trial and other burdens of litigation. See *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The Court's analysis of qualified immunity in the context of a 12(b)(6) motion is a two part process. One part of the inquiry is whether the facts taken in the light most favorable to the plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions, [an additional part] is to ask whether the right was clearly established." *Id.* In *Pearson v. Callahan*, ___ U.S. ____, 129 S. Ct. 808 (2009), the Supreme Court held that a court may review these factors in any order, using its discretion to determine which of the factors should be reviewed first in light of the circumstances of the case. *Id.* at 818.

The question of whether the constitutional right was clearly established must be asked in "the context of the particular case before the court, not as a general, abstract matter." *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in the defendant's position] that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *see also Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains." *Cruz v. City of Laramie, Wyo.*, 239 F.3d 1183, 1187 (10th Cir. 2001) (quoting *Medina v. City and County of* Denver, 960 F.2d 1493, 1498 (10th Cir. 1992)). In other words, there

must be caselaw in which a constitutional violation was found based upon similar conduct. *See Callahan v. Millard County*, 494 F.3d 891, 903 (10th Cir. 2007).

Here, taking Plaintiff's allegations as true as I must on a 12(b)(6) motion, Plaintiff has not alleged that Defendant McCormick committed a violation of clearly established law by denying Plaintiff the opportunity to take communion in his cell. There is apparently no dispute that CDOC classifies communion as a group practice and that Plaintiff has not been authorized to take communion as an individual practice. The state has an established right to manage its prisons, *see Lewis v. Casey*, 518 U.S. 343, 360-61 (1996), and courts have upheld prison regulations prohibiting inmates from participating in group religious practices when in administrative segregation. *See, e.g.*, *Scott v. Stotts*, No. 92-3310-DES, 1993 WL 290256, *1 (D. Kan. July 15, 1993)("Given the restrictive nature of segregation, non-essential elements of religious observance, including congregate services, may be withheld from inmates in segregation, even where those inmates in general population have access to those elements."); *Termunde v. Cook*, 684 F.Supp. 255, 261 (D. Utah 1988) (finding that group religious practices could be prohibited for legitimate security reasons even where "group religious experience is basic to an inmate's First Amendment rights"); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349-53 (quoting *Block v. Rutherford*, 468 U.S. 576, 588 (1984)) (upholding regulations requiring Muslim inmates to work outside on Friday and thus miss religious service and "reaffirm[ing] [the Court's] refusal, even where claims are made under the First Amendment, to 'substitute our judgment on . . . difficult and sensitive matters of institutional administration'"). Furthermore, one of the factors for evaluating whether a regulation or policy which inhibits a religious practice is nevertheless reasonable is "whether alternative means of exercising the right are available

15

notwithstanding the policy or regulation." *Kay v. Bemis*, 500 F.3d at 1219 (quoting *Boles v. Neet*, 486 F.3d at 1181). Plaintiff admits in his Complaint that such an "alternative means" exists: he can request that CDOC authorize his communion as an individualized practice. Although he alleges that obtaining such authorization could be time-consuming, Plaintiff does not allege that this solution is impracticable.[5] The Court concludes that Plaintiff has not pled a violation of clearly established law, as clearly established law does not require that Plaintiff be allowed to take communion alone in his cell without having to request permission from CDOC to do so. Accordingly, Defendant McCormick is entitled to qualified immunity as to Plaintiff's First Amendment Claim against her.[6]

### c.      Punitive Damages

In order to state a claim for punitive damages, Plaintiff must claim that Defendants acted with an evil intent or with reckless indifference towards him. *Smith v. Wade*, 461 U.S. 30, 56 (1983); *see also Searles v. Van Bebber*, 251 F.3d 869 (10th Cir. 2001) (noting that punitive damages could be awarded "without a showing of compensable injury"). Plaintiff's Complaint includes no such allegations. Here, taking all of Plaintiff's allegations as true, Defendants committed various constitutional violations, even after Plaintiff informed them that he believed they were acting in violation of clearly established law. "[A]n award of punitive damages requires an assessment of [the defendant's] subjective state of mind." *Wulf v. City of Wichita*, 883 F.2d 842, 867 (10th Cir. 1989). "The focus must be on whether

---

[5] In contrast, he does allege that another alternative *is* impracticable and contrary to his religious beliefs: using the juice and bread that is routinely provided on CSP food trays for communion. *See Complaint* [#44] at 11.
[6] Plaintiff also references the Fourteenth Amendment in Claim Four. A claim under the Fourteenth Amendment can take two forms: a claim alleging lack of due process or a claim alleging denial of equal protection under the laws. Plaintiff makes no allegations that would support either type of claim against Defendant McCormick.

the defendant's actions call for 'deterrence and punishment over and above that provided by compensatory awards.'" *Jolivet v. Deland*, 966 F.2d 573, 577 (1992) (quoting *Smith*, 461 U.S. at 54); *see Lavicky v. Burnett*, 758 F.2d 468, 477 (10th Cir. 1985) (denying punitive damages where "there was no evidence of malice, wantonness, or oppressiveness"). Plaintiff's allegations, if true, only establish that Defendants denied his requests in reliance on unconstitutional prison regulations; he makes no allegation that they were in any way motivated by malice or recklessly indifferent in denying his requests for reading materials and communion, and his claim for punitive damages should be dismissed.

Accordingly, I respectfully **RECOMMEND** that all constitutional claims brought in Claims One, Two, Three, Four, and Five be **DISMISSED**.

3.  RLUIPA Claims

The First Amendment of the United States Constitution protects the individual's right to free exercise of his chosen religion. U.S. CONST. amend. I. Section 3 of RLUIPA establishes that government actions which substantially burden institutionalized persons' exercise of their religion must be strictly scrutinized by the courts:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [42 U.S.C. § 1997], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the lease restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). By the terms of the Act, the above-reproduced section "applies in any case in which (1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; . . . ." *Id.* § 2000cc-1(b)(1). Plaintiff sufficiently

alleges that CDOC operates CSP and receives federal funds. *Complaint* [#44] ¶ 1. Defendants do not argue otherwise. *See Levie v. Ward*, No. Civ-05-1419-HE, 2007 WL 2840388, at *13 n.15 (W.D. Okla. Sept. 27, 2007) (citing *Cutter v. Wilkinson*, 544 U.S. 709, 715-17 n.4 (2005)) (noting that based on language in *Cutter*, plaintiff bringing RLUIPA claim against state correctional facilities may not need to allege that defendant receives federal funding). *C.f. Murray v. Kansas Dep't of Corr.*, No. 07-3276-EFM, 2009 WL 1617664, at *3 (D. Kan. June 9, 2009) (dismissing plaintiff's RLUIPA claims for failure to allege that KDOC received federal funding or that plaintiff experienced a burden that would affect interstate or foreign commerce).

To successfully state a claim under RLUIPA, Plaintiff must allege facts tending to show that "the prohibited activity is a religious exercise and that the defendant substantially burdened that exercise." *Hammons v. Jones*, No. 00-cv-0143-CVE-SAJ, 2006 WL 353448, at *2 (N.D. Okla. Feb. 14, 2006); *see also Grady*, 2008 WL 3539274, at *4 (citing *Spratt v. Rhode Island Dept. of Corrections*, 4812 F.3d 33, 37-38 (1st Cir. 2007) (citing 42 U.S.C. § 2000cc-1(a)). At least one court in this Circuit has found that a *prima facie* case under RLUIPA also requires a showing that the "religious belief underlying the desired exercise is sincere." *Caruso v. Zenon*, No. 95-MK-1578 (BNB), 2005 WL 5957978, at *10 (D. Colo. July 25, 2005). Here, Defendants do not challenge the sincerity of Plaintiff's religious beliefs. Moreover, it is not likely (based on the allegations in the Complaint) that they could do so successfully. Thus, the Court considers only whether Plaintiff has alleged that Defendants' conduct substantially burdened a religious exercise.

The Act defines "religious exercise" as "includ[ing] any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5. A

18

precursor to the present Act, the Religious Freedom Restoration Act ("RFRA"), declared unconstitutional as applied to the states in *City of Boerne v. Flores*, 521 U.S. 507 (1997), required that the religious exercise protected by the statute be a "central tenet" of the religion. *See Hammons*, 2006 WL 353448, at *2 (discussing RFRA and its "central tenet" requirement). RLUIPA was passed by Congress as a reaction to *City of Boerne*, and Congress intentionally broadened the definition of "religious exercises" protected by the new Act. *Id.*

The Court first considers Claims One, Two, and Three, which arise from Plaintiff's contention that Christian Separatism is a "research intensive faith and knowledge is continuously stressed to the point that the faith's motto is 'prove all things.'" *Complaint* [#44] at 3. Plaintiff alleges that CDOC policies are preventing him from engaging in that study. The "religious exercise" at issue in these claims is religious study and research, which Plaintiff claims is substantially burdened by the CDOC policies prohibiting him from taking a correspondence course, allowing possession of only two books and two magazines at a time, and allowing subscriptions to only two magazines. *See id.* at 4-10. Given the broad definition of "religious exercise" created by RLUIPA, the Court concludes that the study and research asserted by Plaintiff meet the definition of a "religious exercise." *See,e.g.*, *Van Wyhe v. Reisch*, 581 F.3d 639 (8th Cir. 2009) (recognizing group language studies as "religious exercise"); *Hammons*, 2006 WL 353448, at *2 (finding use of certain oils during daily prayers satisfied definition of religious exercise under RLUIPA); *Caruso*, 2005 WL 5957978, at *17 (finding that plaintiff's requested weekly religious education classes were forms of religious exercise protected under RLUIPA); *see also Levie*, 2007 WL 2840388, at *14 (citing *Cutter*, 544 U.S. at 725 n.13; *Williams v. Bitner*, 359 F.Supp.

2d 370, 376 (M.D. Pa. 2005)) (discussing that under RLUIPA practice need not be "fundamental" and the relevant inquiry is whether plaintiff himself sincerely believes practice is important to exercise of his religious beliefs).

Similarly, the Court concludes that in Claim Four, Plaintiff also has identified a specific "religious exercise" burdened by Defendants' conduct – the taking of communion, which he describes as a "sacrament" that he "sincerely believes in . . . , especially in celebration of holy days and that sacrament is an important vital part of his faith, a practice followed since the earliest days of Christianity." *Complaint* [#44] at Claim 4, ¶ 3.

However, in Claim Five, Plaintiff merely alleges generally that Defendants' conduct "places a substantial burden on his beliefs." Claim Five does not identify any particular exercise of religious beliefs which Plaintiff feels pressured to modify or any way in which Defendants' conduct has affected his ability to practice his religion, and the Court concludes that therefore Claim Five does not state a claim under RLUIPA. *See, e.g.*, *Thomas v. Parker*, No. CIV-07-599-W, 2008 WL 2894842, at *19 (W.D. Okla. July 25, 2008) (finding no RLUIPA claim stated where plaintiff alleged generally that prison promoted Christianity over his chosen religion and refused to identify him by his Muslim name but did not identify how these circumstances affected any religious exercise or "impacted his ability to practice his religion").

Next, the Court evaluates whether Plaintiff sufficiently alleges a "substantial burden" on the practice of his religion. RLUIPA does not define the conduct that constitutes a "substantial burden." Nor has the Tenth Circuit articulated a definition. It has held, however, that the "substantial burden" requirement of RLUIPA "is to be interpreted by reference to the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. § 2000bb

*et seq.*, and First Amendment jurisprudence." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 651 (2006). The *Grace United* court acknowledged but did not explicitly resolve the "different and conflicting language used to define substantial burden" in two previous Tenth Circuit cases, *Thiry v. Carlson*, 78 F.3d 1491, 1495 (10th Cir. 1996), and *Werner v. McCotter*, 49 F.3d 1476 (10th Cir. 1995).

In *Thiry,* the Tenth Circuit held that the definition of substantial burden set forth by the Supreme Court in *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988) was controlling in this Circuit for evaluating RFRA claims. *Grace United*, 451 F.3d at 661-6 (citing *Thiry*, 78 F.3d at 1495). The *Thiry* court explained "substantial burden" thus: "incidental effects of otherwise lawful government programs which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs, do not constitute substantial burdens on the exercise of religion." *Id.* (citation and internal quotations omitted). Although the *Grace United* court also discussed the definition set forth by the Tenth Circuit in *Werner,* it noted that the *Werner* definition referred to "fundamental" religious activities in defining "substantial burden," and such reference was no longer appropriate under the broader definition of "religious exercise" established by RLUIPA. *Grace United*, 451 F.3d at 662.[7]

Subsequent cases in the lower courts of this Circuit have refined the applicable definition by looking to relevant Supreme Court precedent. A "substantial burden" to an

_____

[7]In *Werner*, the court defined "substantial burden" as follows:
[T]o exceed RFRA's 'substantial burden' threshold, government regulation must significantly inhibit or constrain conduct or expression that manifests some central tenet of . . . [an individual's] beliefs; must meaningfully curtail [an individual's] ability to express adherence to his or her faith; or must deny [an individual] reasonable opportunities to engage in those activities that are fundamental to [an individual's] religion.
*Grace United*, 451 F.3d at 662 (citation and internal quotations omitted).

individual's religious exercise exists when the individual "is forced to significantly modify his or her religious behavior and violate his or her religious beliefs." *Hammons*, 2006 WL 353448, at *3 (synthesizing definitions set forth by Supreme Court in *Lyng*, 485 U.S. at 450-51; *Thomas v. Review Bd. Of Ind. Empl. Sec. Div.*, 450 U.S. 707, 718 (1981); and *Sherbert v. Verner*, 374 U.S. 398, 404 (1963)). "Restrictions or regulations that impose mere inconveniences or have an incidental effect upon an individual's religious exercise will not be deemed substantial." *Id.* (citing *Lyng*, 485 U.S. at 450-51). *See generally Rocky Mountain Christian Church v. Bd. of County Comm'rs*, 612 F.Supp. 2d 1163, 1171 (D. Colo. 2009) (quoting *Sherbert*, 374 U.S. at 404) (concluding that applicable definition of "substantial burden" met where government "force[d] [plaintiff] to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand."); *Levie*, 2007 WL 2840388, at *15 (quoting *Lovelace*, 472 F.3d at 187 )(relying on Fourth Circuit definition, which quoted *Thomas*, 450 U.S. at 718, that "a substantial burden is one that put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs."). *C.f. Washington v. Klem*, 497 F.3d 272, 278-82 (2007) (in context of defining "substantial burden" under RLUIPA, thoroughly discussing standards set forth by Supreme Court in *Sherbert*, *Thomas*, and *Lyng* and adopting disjunctive two-part definition based on language in *Sherbert* and *Thomas*).

Here, in Claims One and Three, Plaintiff has not alleged a burden of sufficient magnitude to state a claim under RLUIPA. Rather, he makes conclusory allegations that the policies at issue substantially burden his religious practice. In Claim One, he alleges that "not being able to partake in religious correspondance [sic] courses substantially

burdens [Plaintiff's] religious studies." *Complaint* [#44] at Claim One, ¶ 5. Similarly, in Claim Three, Plaintiff alleges that "limiting [Plaintiff] to the possession of only two magazines and subscriptions substantially burdens [Plaintiff's] religious studies." *Id.* at Claim Three, ¶ 3. These general, conclusory allegations, without supporting factual averments, are insufficient to state a constitutional claim against a defendant. *See Riddle,* 83 F.3d at 1205. Plaintiff has alleged no facts that show that he has been forced to abandon important religious beliefs or otherwise significantly modify his religious practice of study and research. *See, e.g.*, *Strope v. Cummings*, No. 05-3385-SAC, 2009 WL 3045463, *2 (D. Kan. Sept. 22, 2009) (finding for defendant on summary judgment as to plaintiff's RLUIPA claim where plaintiff's alleged missed kosher meals caused only "a minor inconvenience" and no "substantial interference with his religious beliefs"). *C.f. Washington,* 497 F.3d 272 (finding RLUIPA claim improperly dismissed where correctional facility policy limited possession of books, and plaintiff alleged that his religion required him to read four different books every day, as a part of preparing to proselytize and also alleging that conversion of others to his religion was a way to gain eternal life); *Levie*, 2007 WL 2840388, at *15-16 (finding plaintiff successfully stated RLUIPA claim where he alleged that prayers and spells were essential part of his religion and rendered ineffective without use of certain oils of which he was deprived by prison); *Hammons*, 2006 WL 353448, at *3 (finding plaintiff successfully stated RLUIPA claim where he alleged complete deprivation of "all Muslim religious oils," alleged oils are "essential to the practice" of his religion, and used in preparation for five daily prayers).

In contrast, in Claim Two, Plaintiff alleges that "[b]eing limited to possessing only 2 personal books substantially burdens [Plaintiff's] religious studies and deprives him of texts

he sincerely believes are necessary and fundamental to practice his religion." *Complaint* [#44] at Claim Two, ¶ 4. Defendants contend that the claim fails because Plaintiff does not allege that he has been denied the "main texts" of his religion, which Defendants identify as three separate books. *Motion* [#50] at 7. The Court finds that at this stage of proceedings, Plaintiff's allegations are sufficient, as he alleges total deprivation of texts he believes are necessary to his religious practice.

Similarly, in Claim Four, Plaintiff alleges an outright denial of his right to take communion since his transfer to CSP in 2007. *Complaint* [#44] at Claim Four, ¶ 4. Because Plaintiff alleges complete deprivation of the ability to take communion, specifically by denial of the ability to obtain grape juice and unleavened bread so that he might take communion alone in his cell, and because he further alleges that the taking of communion is a "sacrament," the Court concludes that in Claim Four, Plaintiff has stated a claim under RLUIPA. He has sufficiently alleged that he has been forced to significantly modify his religious practice. Accordingly, I respectfully **RECOMMEND** that Defendants' Motion to Dismiss Plaintiff's RLUIPA claims be **DENIED** as to Plaintiff's allegations regarding limitations on books and denial of communion, and **GRANTED** regarding all other allegations.

**B.    State Law Claims**

Plaintiff seeks injunctive and declaratory relief pursuant to state law. These claims are barred by Eleventh Amendment immunity and must be dismissed. A federal district court cannot order state officials to act according to state law. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

## C.    Leave to Amend

The Court notes the liberal philosophy regarding amendment of pleadings reflected in both the Federal Rules of Civil Procedure and years of legal precedent, especially when the timing of the amendment and potential prejudice to Defendant do not weigh against it. *See* Fed. R. Civ. P. 15(a), *Miner v. Prime Equip. Co.,* 451 F.3d 1196, 1204 (10th Cir. 2006). Because Plaintiff is proceeding *pro se*, and because the Court is not convinced that amendment would undoubtedly be futile or that it would in any meaningful way be prejudicial to Defendants, the Court recommends that Plaintiff be granted leave to file an amended complaint.  *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001).

The Court is mindful of Plaintiff's obligation pursuant to Fed. R. Civ. P. 11 to ensure the truthfulness of his statements to the Court.  If Plaintiff cannot *truthfully* allege facts remedying the deficiencies in his first complaint regarding personal participation by Defendants in constitutional violations and substantial burden to his religious practices, his amended complaint will suffer from the same fatal deficiencies noted above and undoubtedly be subject to summary dismissal.

## IV.    Conclusion

Accordingly, the Court respectfully **RECOMMENDS** that the Motion be **DENIED** as to: (1) Plaintiff's claim for injunctive relief against Defendant CDOC and Individual Defendants McCormick, Hildebrand, and DeCesaro in their official capacities pursuant to RLUIPA based upon denial of the opportunity to take communion alone in his cell; and (2) Plaintiff's claim for injunctive relief against Defendant CDOC and Individual Defendants Jones and Hildebrand in their official capacities pursuant to RLUIPA based upon denial of

religious texts fundamental to his religion and **GRANTED** as to all other claims stated in the Complaint, and that such claims be dismissed without prejudice. The Court further **RECOMMENDS** that Plaintiff be permitted to file an Amended Complaint within a reasonable time after entry of an Order by the District Court on this Recommendation.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: March 23, 2010

BY THE COURT:
 s/ Kristen L. Mix
U.S. Magistrate Judge