IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-00537-WJM-KLM

JACOB IND,

        Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS;
SUSAN JONES;
MARY NELL MCCORMICK;
MCCAIN HILDEBRAND;
RENE OLIVETT;
JAMES W. BROWN;
ANTHONY DECESARO; and
UNKNOWN EMPLOYEES OF CSP AND CDOC,

        Defendants.
_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

        This matter is before the Court on **Defendants' Motion to Dismiss Amended Complaint** [Docket No. 112; Filed November 17, 2010] ("Motion to Dismiss").  Plaintiff filed a Response on December 20, 2010 [Docket No. 119], and Defendants did not file a Reply. Therefore, the Motion to Dismiss is fully briefed and ripe for resolution.

        Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72.1C.3., the Motion to Dismiss has been referred to this Court for recommendation.  The Court has reviewed the Motion, Plaintiff's Response, the entire case file, the applicable law and is sufficiently advised in the premises.  For the reasons set forth below, I respectfully **RECOMMEND** that the Motion to Dismiss be **GRANTED in part and DENIED in part**.

### I.  Factual and Procedural Background

Plaintiff, who is proceeding *pro se*, is currently incarcerated at the Centennial Correctional Facility ("CCF") in Canon City, Colorado. *Motion* [#112] at 1 n.1. At the time of the filing of the lawsuit, Plaintiff was incarcerated at Colorado State Penitentiary ("CSP"). CSP is a maximum-security/administrative segregation facility and is classified as "Level V," the highest security level within the Colorado Department of Corrections ("CDOC") system. *See* Colo. Rev. Stat. § 17-1-104.3.

Plaintiff identifies himself as a follower of "Christian Separatism," a group within the larger religion known as "Christian Identity." *See Amended Complaint* [#103] at 3. This religion has been described as "rest[ing] upon White Supremacy principles, teaching that all other races and religions are inferior." *Ind v. Wright*, 52 Fed. App'x 434, 436 (10th Cir. 2002) (unpublished decision); *see also Rooks v. Zavares*, No. Civ. 99-B-631, 2001 WL 34047959, at *1 (D. Colo. Jan. 24, 2001) (unpublished decision) (describing beliefs of Christian Identity followers). The instant lawsuit arises from Plaintiff's claims that CDOC policies unconstitutionally inhibit his ability to practice his religion and that he has been unlawfully given a security classification because of his beliefs.

The operative Complaint for purposes of resolving the Motion to Dismiss was filed on October 25, 2010 [Docket No. 103]. A prior motion to dismiss was granted in part and denied in part and Plaintiff was given leave to amend his pleadings. *See Order* [#95]; *Recommendation* [#75]. The Amended Complaint at issue here is Plaintiff's attempt to cure pleading deficiencies identified with his prior Complaint [Docket No. 44].

In the Amended Complaint, Plaintiff alleges violations of federal constitutional law and brings this action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq*. He also

2

alleges violations of state constitutional law and Colo. Rev. Stat. § 17-42-101. Specifically, in his Amended Complaint, Plaintiff asserts five claims for relief against various Defendants, including newly named "Unknown Employees of CSP and CDOC" (the "John Doe Defendants"):

> Claim One:  The ban on religious correspondence courses at CSP violates RLUIPA, the Fourteenth Amendment of the United States Constitution, Colo. Rev. Stat. § 17-42-101, and the Colorado Constitution Art. II, Secs. 3 & 4. *Amended Complaint* [#103] at 4.  This claim is asserted against Defendant CDOC and against Defendants Jones, McCormick, Hildebrand and the John Doe Defendants in their official and individual capacities.

> Claim Two:  The book limits imposed at CSP violate RLUIPA, the Fourteenth Amendment of the United States Constitution, Colo. Rev. Stat. § 17-42-101, and the Colorado Constitution Art. II, Secs. 3 & 4.  *Amended Complaint* [#103] at 5.  This claim is asserted against Defendant CDOC and against Defendants Jones, Olivett, Hildebrand and the John Doe Defendants in their official and individual capacities.

> Claim Three:  The magazine limits imposed at CSP violate RLUIPA, the Fourteenth Amendment of the United States Constitution, Colo. Rev. Stat. § 17-42-101, and the Colorado Constitution Art. II, Secs. 3 & 4. *Amended Complaint* [#103] at 6.  This claim is asserted against Defendant CDOC and against Defendants Jones, Brown, Hildebrand and the John Doe Defendants in their official and individual capacities.

> Claim Four:  The deprivation of the opportunity to take communion violates the First and Fourteenth Amendments of the United States Constitution, RLUIPA, Colo. Rev. Stat. § 17-42-101, and the Colorado Constitution Art. II, Sec. 4. *Amended Complaint* [#103] at 7.  This claim is asserted against Defendant CDOC and against Defendants McCormick, Hildebrand and DeCesaro in their official and individual capacities.

> Claim Five: The classification of Plaintiff as a member of a Security Threat Group ("STG") based upon his political and religious beliefs violates the First and Fourteenth Amendments to the United States Constitution, RLUIPA, Colo. Rev. Stat. § 17-42-101, and the Colorado Constitution Art. II, Sec. 4. *Amended Complaint* [#103] at 8.  This claim is asserted against Defendant CDOC and against the John Doe Defendants in their official and individual capacities.

The Amended Complaint seeks the following relief:

<u>United States Constitutional Violations</u>:  Injunctive and declaratory relief from Defendants in both their individual and official capacities and punitive and nominal damages in their individual capacities.

<u>State Law and Constitutional Violations</u>:  Declaratory relief from Defendants in their individual and official capacities.

<u>RLUIPA Violations</u>:  Injunctive and Declaratory relief, as well as nominal, compensatory and punitive damages from Defendants in their individual and official capacities.

*Id.* at 10.

In the instant Motion to Dismiss, Defendants contend that Plaintiff's transfer to CCF, which has less restrictive book and magazine limitations, moots Claims Two and Three. *Motion* [#112] at 7-8.  Defendants also request that the Court dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted and qualified immunity.  *Id.* at 8-15.  Finally, Defendants contend that Plaintiff failed to cure the pleading deficiencies associated with his prior Complaint and that Plaintiff erroneously re-alleges claims that were dismissed with prejudice.  *Id.* at 4-7, 15.

## II.  Legal Standard

Because federal courts are courts of limited jurisdiction, the Court must have a statutory basis for exercising jurisdiction.  *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).  The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it.  Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'"  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666

4

(1974)).  A motion to dismiss pursuant to Rule 12(b)(1) may take two forms:  a facial attack or a factual attack.  When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a factual attack on a complaint supported by affidavits and other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *Id.* at 1003.

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."  *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).  To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations."  *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  That is, a complaint must include "enough facts to state a claim to relief that is plausible on its face."  *TON Services, Inc. v. Qwest Corp.*, 493 F.3d 1225, 1235 (10th Cir. 2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."  *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009).  Moreover, "[a] pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that defendant has acted unlawfully." *Id.* (citation omitted). As the Tenth Circuit has explained, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).   However, "[t]he court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Ashcroft*,129 S. Ct. at 1949 (citation omitted).

Finally, the Court must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 594, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).   However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his or her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).   In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

## III.  Analysis

As a preliminary matter, the Court clarifies which claims contained in the Amended

Complaint are at issue here.  Pursuant to the Order on my prior Recommendation, Plaintiff

was given leave to amend his Complaint to cure the pleading deficiencies identified in the

Recommendation.  *Order* [#95] at 12; *Recommendation* [#75] at 25-26.  The purpose of this

opportunity was not to provide a chance to appeal the dismissal of certain claims or parties

which were based on binding legal conclusions.  The dismissals based upon binding legal

conclusions operate as the law of the case and nothing contained in the Amended

Complaint or argued in Plaintiff's Response overcomes them.  *See Gordon v. Arellano*, No.

08-cv-02538, 2010 WL 1790410, at *5 (D. Colo. May 3, 2010) (unpublished decision) (citing

*Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1140 (10th Cir. 2009)).[1]

The dismissals that the Court deems to be binding are: (1) the dismissal of any

constitutional claim contained in Claim Four as to any Defendant sued in his/her individual

capacity, and specifically as to Defendant McCormick, due to qualified immunity; (2) the

dismissal of any RLUIPA claim contained in Claims One through Five asserted against any

Defendants in their individual capacities; (3) the dismissal of any requests for monetary

damages related to any RLUIPA claim contained in Claims One through Five, including any

request for nominal, compensatory or punitive damages; and (4) the dismissal of any state

---

[1] To depart from the law of the case, a party must show that the previous decision was clearly erroneous or works a manifest injustice.  *Gordon*, 2010 WL 17900410, at *5.  For the most part, Plaintiff acknowledges that his re-assertion of certain claims and remedies should not be interpreted as an attempt to revive them, but to preserve them for later appeal.  *See Response* [#119] at 3.  Such a practice is unnecessary and results in confusion on the docket.  To the extent that Plaintiff does attempt to revive claims or remedies dismissed for binding legal reasons, he has failed to clearly show that the prior Order was clearly erroneous or would work a manifest injustice.  For example, regarding Plaintiff's contention that RLUIPA allows claims against individuals or for money damages based upon an allegation that interstate commerce is at issue, *Response* [#119] at 4-5, he has failed to support his conclusory contentions and, as is discussed below, the Court will not revisit the dismissal of these type of claims or remedies at this stage.

law or state constitutional claims or declaratory relief associated with such claims.

First, to the extent that Plaintiff re-asserts constitutional injuries in Claim Four attributed to Defendant McCormick, her dismissal was with prejudice due to qualified immunity and cannot be resurrected through amendment. *See Order* [#95] at 6-7; *Recommendation* [#75] at 12-16. Further, to the extent that Plaintiff attributes constitutional injury in relation to Claim Four to any additional Defendants (here, Defendants Hildebrand and DeCesaro), even assuming that he has adequately alleged their personal participation, per the law of the case they are also entitled to qualified immunity. Accordingly, in relation to Claim Four, the Court recommends that the constitutional claims asserted against Defendants McCormick, Hildebrand and DeCesaro in their individual capacities be dismissed with prejudice pursuant to qualified immunity.

Second, to the extent that Plaintiff re-asserts any RLUIPA claims against the individual Defendants (prior Defendants or any new John Doe Defendants) in their individual capacities, the law of the case is that Plaintiff cannot pursue any RLUIPA claims against any individual Defendants in their individual capacities and must instead proceed against Defendant CDOC and/or the individual Defendants in their official capacities. *Order* [#95] at 9-10; *Recommendation* [#75] at 7-8. Accordingly, in relation to Claims One through Five, the Court recommends that the RLUIPA claims asserted against any individual Defendants be dismissed with prejudice.[2]

Third, and related to the second point, to the extent that Plaintiff seeks recovery of

---

[2] As will be discussed in Part III.A., the Court recommends that dismissal of the individual Defendants in relation to any RLUIPA claims be both as to their individual and official capacities. Therefore, the Court recommends that the RLUIPA claims proceed only against Defendant CDOC.

any monetary damages in relation to RLUIPA, this statute does not allow recovery for monetary damages. *See Order* [#95] at 9-10; *Recommendation* [#75] at 7-8. Accordingly, in relation to Claims One through Five, the Court recommends that any request for monetary damages associated with alleged RLUIPA violations be dismissed with prejudice.

Fourth and lastly, to the extent that Plaintiff re-asserts any alleged state law or state constitutional violations, these claims were dismissed and that dismissal operates as the law of the case. *Order* [#95] at 11-12; *Recommendation* [#75] at 24. Furthermore, because no state causes of action remain, Plaintiff's request for declaratory relief in relation to such claims is not viable. Accordingly, in relation to Claims One through Five, the Court recommends that any state law or state constitutional claims and any associated declaratory relief sought be dismissed with prejudice.

Therefore, the only claims that remain for consideration are: (1) RLUIPA claims contained in Claims One through Five asserted against Defendant CDOC seeking injunctive and declaratory relief. Whether Plaintiff's Amended Complaint cures the pleading deficiencies associated with the RLUIPA claims contained in Claims One, Three and Five will be addressed below, but only in relation to whether Plaintiff can proceed against Defendant CDOC and obtain injunctive and declaratory relief; (2) Constitutional claims contained in Claims One, Two, Three and Five asserted against Defendants in their official and individual capacities, including any requests for injunctive, declaratory or monetary relief; and (3) Constitutional claims contained in Claim Four asserted against Defendants in their official capacities, but only seeking injunctive and declaratory relief. Whether Plaintiff's Amended Complaint cures the failure to allege a party's personal participation will also be addressed below.

## A.    Official Capacity Claims for Injunctive and Declaratory Relief

Although all injunctive and declaratory relief claims asserted against the individual Defendants remain at issue following the Order on my Recommendation, see *Order* [#95] at 9, because claims for injunctive and declaratory relief are asserted against Defendants in their official capacities, they are in essence claims against the State itself, here Defendant CDOC. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

As a preliminary matter, the Court notes that in neither the present Motion to Dismiss nor the prior Motion to Dismiss do Defendants raise the defense of sovereign immunity in relation to any claims asserted against Defendant CDOC.   Ordinarily, the Eleventh Amendment protects a state, or state agency like the CDOC, from suit against it unless the state has expressly consented to suit. *See, e.g.*, *Hunt v. CDOC*, 271 Fed. Appx. 778, 780-81 (10th Cir. Mar. 28, 2008) (unpublished decision).   An exception has been carved out, however, for claims asserted against individual Defendants in their official capacities.  *See Ex parte Young*, 209 U.S. 123, 159-60 (1908) (holding that such claims are not barred by sovereign immunity).  The defense of sovereign immunity "shares features with affirmative defenses, while also containing traits more akin to subject matter jurisdiction."  *United States ex rel. Burlbaw v. Orenduff*, 548 F.3d 931, 941 (10th Cir. 2008). Like an affirmative defense, sovereign immunity can be waived if a state chooses to "waive its Eleventh Amendment protection and allow a federal court to hear and decide a case commenced or prosecuted against it."   *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 267 (1997). Moreover, although sovereign immunity has jurisdictional elements, the Court is not obligated to address the defense if not raised.  *Orenduff*, 548 F.3d at 942.

In relation to Plaintiff's constitutional claims brought pursuant to 42 U.S.C. § 1983,

the state has not expressly consented to suit.  *Hunt*, 271 Fed. Appx. at 780-81.  Although Defendants' failure to raise sovereign immunity as a defense to suit of Plaintiff's constitutional claims could arguably be viewed as a waiver to suit here, the Court does not *sua sponte* undertake the determination of whether Defendant is nevertheless entitled to sovereign immunity.  As such, the Court will address whether Plaintiff's constitutional claims have merit as to Defendant CDOC and any properly named individual Defendants in both their official and individual capacities.   Therefore, assuming Plaintiff has stated any constitutional claims for relief, the Court recommends that these claims proceed against all relevant Defendants at this time.[3]

In relation to Plaintiff's claims brought pursuant to RLUIPA, although the Tenth Circuit has not yet addressed the issue, the prevailing weight of authority is that the enactment of RLUIPA (and a state's acceptance of federal funds pursuant to it) requires the state to waive its sovereign immunity for suits seeking equitable relief.  *See, e.g.*, *Madison v. Virginia*, 474 F.3d 118, 130-31 (4th Cir. 2006); *Benning v. Georgia*, 391 F.3d 1299, 1305 (11th Cir. 2004).  The Court has already held that this waiver does not also extend to suits for damages.  *Recommendation* [#75] at 8.  Assuming that the Tenth Circuit will take the majority viewpoint, and noting the absence of any objection from Defendants, the Court will address whether Plaintiff's RLUIPA claims have any merit as to Defendant CDOC only.  Because Defendant CDOC can provide any injunctive or declaratory relief requested, suing the individual Defendants in their official capacities is superfluous.  *Saleh v. BOP*, N0. 05-cv-02467-PAB-KLM, 2009 WL 3158120, at *2 (D. Colo. Sept. 29, 2009)

---

[3] However, no claims for monetary damages may be asserted against Defendant CDOC or the individual Defendants in their official capacities.  *See Recommendation* [#75] at 6.

(unpublished decision); *see also Smith v. Bd. of County Comm'rs*, 216 F. Supp. 2d 1209 (D. Kan. 2002) (noting that dismissal of individuals sued in their official capacities "is warranted as a matter of judicial economy and efficiency"); *Smith v. Brevard County*, 461 F. Supp. 2d 1243 (M.D. Fla. 2006) (dismissing individuals sued in their official capacities where the entity whose policies are at issue is also a defendant); *McLin v. City of Chicago*, 742 F. Supp. 994 (N.D. Ill. 1990) ("Because the [entity] is already a defendant, dismissing [the individual defendants] does not prejudice plaintiffs, and it clarifies and streamlines the pleadings."). Therefore, the Court recommends that all official capacity claims asserted against the individual Defendants (including any John Doe Defendants), in relation to Plaintiff's RLUIPA claims be dismissed.

B.   **Mootness**

Mootness is a jurisdictional issue. Therefore, the Court can consider pleadings apart from the Amended Complaint in resolving the issue. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). Defendants contend that Claims Two and Three are moot because they pertain to book and magazine policies at issue at CSP not CCF. *Motion* [#112] at 7-8; *Exhibit B* [#112-2]. Specifically, Defendant contends that because Plaintiff is no longer housed at CSP, and because CCF's limitations are less restrictive, Plaintiff no longer suffers from the pled injuries and the claims should be dismissed. *Motion* [#112] at 7-8.

As a preliminary matter, to the extent Claims Two and Three seek monetary relief (and that such remedies survive), the claims are not moot. *See Chihuahuan Grasslands Alliance v. Kempthorne*, 545 F.3d 884, 891-92 (10th Cir. 2008) (noting dismissal of claim in its entirety only appropriate where injury is cured and only prospective relief sought). As to injunctive and declaratory relief, Plaintiff essentially argues that any alleged mootness

12

should be excused because the injury is capable of repetition yet evading review. *Response* [#119] at 2.  For example, Plaintiff claims that he has been placed at CSP at least twice during his life sentence and "it is inevitable that he will go back a 3rd time given [the length of his] sentence" and his STG classification.  *Id.*  He also argues that Defendant CDOC's transfer of Plaintiff to CCF should be deemed a voluntary cessation that does not moot his claims.  *Id.*

The Court agrees.  First, "[t]he burden of demonstrating mootness 'is a heavy one,'" and a claim is not moot unless "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979).  Here, Plaintiff contends that CSP and CCF are in the same prison complex and are run by the same administration.  Moreover, Plaintiff is still subject to book and magazine restrictions at CCF, albeit lesser ones.  *Exhibit B* [#112-2] at 5-6.  Further, the Court credits Plaintiff's assertion that given the length of his sentence and STG classification, there is a reasonable likelihood that he may be re-assigned to CSP in the future and be subject to the same restrictions at issue here.

Second, "[i]t is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'"  *Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citation omitted).  Here, Defendant CDOC's voluntary cessation of its conduct only serves to moot a claim if Defendant can satisfy the "'heavy burden' of showing that 'it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"  *Saleh v. BOP*, No. 05-cv-02467-PAB-KLM, 2009 WL 3158120, at *6 (D. Colo. Sept. 29, 2009) (unpublished decision) (quoting *Laidlaw*, 528 U.S. at 189).  On this record,

13

there is no assurance that Plaintiff will not be re-assigned to CSP.  Therefore, Defendant CDOC's transfer of Plaintiff does not serve to moot his claims in relation to book and magazine limitations.  Assuming that Plaintiff has asserted valid RLUIPA and constitutional violations, which will be addressed below, Claims Two and Three should go forward.  *See United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) (counseling against mootness where "public interest in having the legality of the practices settled . . . militates against a mootness conclusion").

### C.    Claim One

Claim One pertains to whether Defendant CDOC's policy in prohibiting inmates from taking correspondence courses violates RLUIPA and the Fourteenth Amendment.

### 1.    RLUIPA (Against Defendant CDOC for injunctive and declaratory relief only)

As noted in my prior Recommendation, RLUIPA establishes that government actions which substantially burden institutionalized persons' exercise of their religion must be strictly scrutinized by the courts:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [42 U.S.C. § 1997], even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  By the terms of the Act, the above-reproduced section "applies in any case in which (1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; . . . ."  *Id.* § 2000cc-1(b)(1).  It has already been established that Defendant CDOC receives federal assistance.  *See*

*Recommendation* [#75] at 18.

To successfully state a claim under RLUIPA, Plaintiff must allege facts tending to show that "the prohibited activity is a religious exercise and that the defendant substantially burdened that exercise." *Hammons v. Jones*, No. 00-cv-0143-CVE-SAJ, 2006 WL 353448, at *2 (N.D. Okla. Feb. 14, 2006) (unpublished decision); *see also Grady v. Holmes*, No. 07-cv-02251-EWN-CBS, 2008 WL 3539274, at *4 (D. Colo. Aug. 12, 2007) (unpublished opinion) (citing *Spratt v. Rhode Island DOC*, 4812 F.3d 33, 37-38 (1st Cir. 2007) (citing 42 U.S.C. § 2000cc-1(a))).  At least one court in this Circuit has found that a *prima facie* case under RLUIPA also requires a showing that the "religious belief underlying the desired exercise is sincere."  *Caruso v. Zenon*, No. 95-MK-1578 (BNB), 2005 WL 5957978, at *10 (D. Colo. July 25, 2005) (unpublished decision).  Here, the sincerity of Plaintiff's belief is not in dispute.  Moreover, as noted in my prior Recommendation, Plaintiff has clearly articulated that Defendant CDOC's prohibition of correspondence courses impacts a religious exercise.  *Recommendation* [#75] at 19-20.  Thus, the Court considers only whether Plaintiff has alleged that Defendant CDOC's conduct substantially burdens Plaintiff's ability to exercise his religious beliefs.

RLUIPA does not define the conduct that constitutes a "substantial burden."  Nor has the Tenth Circuit articulated a definition.  It has held, however, that it "is to be interpreted by reference to [the Religious Freedom Restoration Act ("RFRA")] and First Amendment jurisprudence."  *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 651 (10th Cir. 2006).  Recent decisions in this Circuit have looked to Supreme Court precedent to refine the criteria.  For example, one court has held that a "substantial burden" on an individual's religious exercise exists when the individual "is forced to significantly modify his

15

or her religious behavior and violate his or her religious beliefs." *Hammons*, 2006 WL 353448, at *3 (synthesizing definitions set forth by Supreme Court in *Lyng v. NW Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450-51 (1988); *Thomas v. Review Bd. of Ind. Empl. Sec. Div.*, 450 U.S. 707, 718 (1981); and *Sherbert v. Verner*, 374 U.S. 398, 404 (1963)). "Restrictions or regulations that impose mere inconveniences or have an incidental effect upon an individual's religious exercise will not be deemed substantial." *Id.* (citing *Lyng*, 485 U.S. at 450-51); *see also Rocky Mountain Christian Church v. Bd. of County Comm'rs*, 612 F. Supp. 2d 1163, 1171 (D. Colo. 2009) (concluding that applicable definition of "substantial burden" met where government "force[d] [plaintiff] to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand" (quoting *Sherbert*, 374 U.S. at 404)).

While the Court previously found that Plaintiff had not alleged a burden of sufficient magnitude to state a claim under RLUIPA in relation to Claim One, the Court finds that the Amended Complaint cures that deficiency. Specifically, Plaintiff contends that "[c]orrespondence courses provide necessary guidance in how to understand the Plaintiff's religious tests and provide guidance from elders. Being deprived of that input leaves the Plaintiff exposed to heresies which will lead to the damnation of his soul and prevents him from the study necessary to protect himself." *Amended Complaint* [#103] at 4; *see, e.g.*, *Washington v. Klem,* 497 F.3d 272, 282-83 (3d Cir. 2007) (finding RLUIPA claim improperly dismissed where correctional facility policy limited possession of books, and plaintiff alleged that his religion required him to read four different books every day, as a part of preparing to proselytize and also alleging that conversion of others to his religion was a way to gain

eternal life); *Levie v. Ward*, No. Civ-05-1419, 2007 WL 2840388, at *15-16 (W.D. Okla. Sept. 27, 2007) (unpublished decision) (finding plaintiff successfully stated RLUIPA claim where he alleged that prayers and spells were essential part of his religion and rendered ineffective without use of certain oils of which he was deprived by prison); *Hammons*, 2006 WL 353448, at *3 (finding plaintiff successfully stated RLUIPA claim where he alleged complete deprivation of "all Muslim religious oils," alleged oils were "essential to the practice" of his religion, and used in preparation for five daily prayers).  At this stage, the RLUIPA claim should go forward.[4]

> **2.  Fourteenth Amendment (Against Defendants CDOC, Jones, McCormick, Hildebrand and the John Doe Defendants for injunctive and declaratory relief in their official capacities and for monetary relief in their individual capacities)**
>
> **a.  Personal Participation**

As noted in my prior Recommendation, evidence of personal participation is a fundamental requirement for finding that an individual Defendant violated Plaintiff's

---

[4] Although Defendants argue that even if Plaintiff has stated a RLUIPA claim, the prohibition of correspondence courses is reasonably related to a compelling government interest, see *Motion to Dismiss* [#112] at 9-11, this analysis cannot be conducted at this stage. To consider this argument further necessarily involves a consideration of facts which are not yet in evidence and which would require the Court to look beyond the four corners of the Amended Complaint.  *See, e.g., Reid v. Wiley*, No. 07-cv-01855-PAB-KMT, 2009 WL 1537879, at *6 (D. Colo. May 29, 2009) (unpublished decision) (noting that "court is unable to complete the four-factor balancing analysis" for First Amendment issues on a motion to dismiss); *Mitchell v. Wiley*, No. 06-cv-00547-WYD-BNB, 2007 WL 2890095, at *4 (D. Colo. Sept. 26, 2007) (unpublished decision) (agreeing with magistrate judge that unsupported factual assertions about the ultimate constitutionality of prison rule which interferes with a religious exercise is not a proper basis for resolving a motion to dismiss).  Moreover, I note that there has been no briefing on whether the prohibition constitutes the least restrictive means to carry out any alleged compelling government interest as is also required by the Act.  *See* 42 U.S.C. § 2000cc-1(a).

constitutional rights. *See Fotte v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997); *Bennett v. Passic*, 545 F.2d 1260, 1263 (10th Cir. 1976). An affirmative link must exist between the alleged constitutional violation and a defendant's participation, control, or direction. *Bennett*, 545 F.2d at 1262-63; *see also Winslow v. Stanley*, No. 06-cv-02256-ZLW, 2007 WL 4268961, at *6 (D. Colo. Nov. 28, 2007) (unpublished decision). As was the case with the previous Complaint, the Amended Complaint provides insufficient bases to hold Defendants Jones, McCormick and Hildebrand responsible for any Fourteenth Amendment violations. *See, e.g.*, *Whitington v. Ortiz*, 307 Fed. Appx. 179, 190-91, 193 (10th Cir. Jan. 13, 2009) (unpublished decision) (noting that allegations which "rest almost entirely on the premise that [defendant] was responsible for regulations which [plaintiff] claim[ed] [were] unconstitutional and which, as applied, infringed [plaintiff's] constitutional rights" and that "the denial of grievances alone [are] insufficient to establish personal participation in the alleged constitutional violations").

Plaintiff acknowledges this deficiency in his Response and notes that he was not attempting to correct it in the Amended Complaint. *Response* [#119] at 3. Rather, he contends that "[t]he [John Doe] Defendants in this case are the ones who specifically refused to accommodate" Plaintiff. *Id.* Therefore, Defendants Jones, McCormick and Hildebrand should be dismissed. *See, e.g.*, *Dawson v. Johnson*, 266 Fed. Appx. 713, 715-17 (10th Cir. Jan. 8, 2008) (unpublished decision) (upholding dismissal of both official and individual capacity claims where plaintiff failed to show personal participation). Accordingly, the Court considers whether Plaintiff has stated a Fourteenth Amendment violation as to Defendant CDOC and the John Doe Defendants in both their official and individual capacities.

### b.    Fourteenth Amendment

To state a Fourteenth Amendment due process claim, Plaintiff must allege facts that satisfy two elements.  *See Bd. of Regents v. Roth*, 408 U.S. 564, 568-71 (1972).  First, he must show that he was deprived of a protected liberty or property interest.  *See id.*; *Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001).  The liberty or property interest factor is a threshold issue.  *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) (noting that without a protected interest, "no particular process [is] constitutionally required").  Second, if the threshold issue is satisfied, Plaintiff must show that he was not afforded the appropriate level of process.  *See Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1135 (10th Cir. 1994).  While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," *Shaw v. Murphy*, 532 U.S. 223, 228 (2001), this reality is tempered by the recognition that "[t]here is no iron curtain drawn between the Constitution and the prisons of this country."  *Wolff v. McDonnell*, 418 U.S. 539, 555-56 (1974).

Here, the Court interprets Plaintiff to be alleging that he has been deprived of a liberty interest due to Defendants' refusal to permit inmates to participate in correspondence courses.  Although Plaintiff contends that Colorado law creates a liberty interest in this context, the Supreme Court's holding in *Sandin v. Connor* – that, for prisoners, a liberty interest exists only where a specific prison action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" – controls here.  *Sandin v. Connor*, 515 U.S. 472, 484 (1995).  As the *Sandin* Court made clear, mere language of a statute or regulation alone does not create a constitutionally-protected right.  *See id.* at 483 ("[W]e believe that the search for a negative implication from

19

mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause."). Instead, the relevant question is whether the alleged deprivation imposes an "atypical and significant hardship" on the prisoner. *Id.* at 484.[5]

The question of whether the deprivation of correspondence courses while in prison imposes an atypical and significant hardship usually includes a consideration of whether the conditions in question are a dramatic departure from what would ordinarily be expected. However, here, the question of whether providing correspondence courses implicates a liberty interest appears to be a settled issue. As a preliminary matter, the Court notes that Plaintiff does not contend that he has been denied all educational opportunities, e.g., independent study, but, rather, only the opportunity to participate in correspondence courses. To this end, it has been held that "[p]articipation in a vocational training program while involuntarily confined is a privilege, not a right guaranteed by the federal constitution." *See Burch v. Jordan*, No. 07-3236, 2010 WL 5391569, at *22 (D. Kan. Dec. 22, 2010) (unpublished decision) (recognizing that "education is not considered a fundamental right protected by the Constitution"). Moreover, "[a] limitation on educational privilege, particularly to further a legitimate concern such as [a concern held by a] penal institution . . ., is not a denial of a federally-guaranteed right." *Robinson v. Smith*, 982 F.2d 529

---

[5] Although Plaintiff argues that *Sandin* does not apply when the State has created protected interests, *Response* [#119] at 8-9, assuming Plaintiff's argument has merit, in the absence of the clear intention to create such an interest, the atypical and significant hardship test articulated in *Sandin* controls. *See Sandin*, 515 U.S. at 483-84. Here, Plaintiff's citation to the Colorado Constitution or pre-*Sandin* case law is inapposite. Neither explicitly creates a prisoner's liberty interest in participating in correspondence courses. For that matter, neither explicitly creates a property interest in possessing a particular number of books or magazines while in prison, which are the interests at issue in Claims Two and Three. Therefore, the *Sandin* test applies to Claims One, Two and Three.

(table) (10th Cir. Dec. 9, 1992) (unpublished decision) (noting that "[t]his circuit has never determined that prisoners enjoy an entitlement to educational or rehabilitative services"); *see also Estate of DiMarco v. Wyo. Dep't of Corr., Div. of Prisons*, 473 F.3d 1334, 1342 (10th Cir. 2007) (noting that "assessment [of whether a liberty interest exists] must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts)."  Given these clear legal conclusions, the restrictions on participating in correspondence courses at issue here cannot be deemed to be a dramatic departure from the norm or atypical.

To the extent that Plaintiff intended this claim to be read more broadly to argue that the deprivation of correspondence courses is actually a deprivation of his religious rights, such a claim is more appropriately addressed pursuant to the protections afforded by RLUIPA.  *See Castro v. United States*, 450 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a *pro se* party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis").[6]  Because Plaintiff does not allege the deprivation of a liberty interest as required to state a claim pursuant to the Fourteenth Amendment, this challenge

---

[6] Although Claim One could arguably be viewed as an independent First Amendment challenge, the Court does not find that interpreting the claim beyond its four corners is warranted here.  First, the Amended Complaint is detailed and Plaintiff methodically lists each claim and the legal basis for such claim in the claim's heading.  Plaintiff only references the First Amendment in relation to Claims Four and Five, not in relation to Claims One, Two or Three. Although Defendants appear to assume that Claims One, Two and Three involve the First Amendment, the Court notes the conspicuous absence of any reference to the First Amendment within these claims.  While Plaintiff's pleadings are entitled to liberal pleading interpretation, the Court is not Plaintiff's advocate and is not at liberty to construct claims on his behalf.  *Whitney*, 113 F.3d at 1173-74.  Where, as here, Plaintiff pled a particular injury in reference to certain claims but not others, the Court will not attempt to divine Plaintiff's intentions in doing so. Therefore, the Court does not analyze Claims One, Two or Three in relation to any alleged First Amendment violation.

must be dismissed against Defendants in any capacity.  Even if that were not the case, Plaintiff has not alleged what process he was entitled to but did not receive.  Thus, his claim necessarily fails under either the liberty interest or due process prong and must be dismissed.  This dismissal necessarily means that Plaintiff has no monetary remedy for any alleged violation contained in Claim One.

Accordingly, given the conclusions set forth above, the Court RECOMMENDS that Claim One go forward only as to Plaintiff's RLUIPA claim asserted against Defendant CDOC seeking injunctive and declaratory relief.

**D.    Claim Two**

Claim Two relates to whether Defendant CDOC's policy in restricting inmates in segregation at CSP from possessing more than two books violates RLUIPA and the Fourteenth Amendment.

**1.    RLUIPA (Against Defendant CDOC for injunctive and declaratory relief only)**

The RLUIPA claim associated with Claim Two relates to whether the book limits imposed while in segregation at CSP violate the Act.  This claim survived the prior motion to dismiss.  Accordingly, it is not at issue here and remains for further adjudication against Defendant CDOC seeking injunctive and declaratory relief only.  *See also supra* note 3.

**2.    Fourteenth Amendment (Against Defendants CDOC, Jones, Olivett, Hildebrand and the John Doe Defendants for injunctive and declaratory relief in their official capacities and for monetary relief in their individual capacities)**

### a.    Personal Participation

As noted above in Claim One, although Plaintiff re-asserted Claim Two against Defendants Jones, Olivett and Hildebrand, the Amended Complaint fails to cure the pleading deficiencies associated with alleging these Defendants' personal participation. This recognition necessarily means that constitutional claims asserted against Defendants Jones, Olivett and Hildebrand in either their official and individual capacities must be dismissed.  *See, e.g.*, *Dawson*, 266 Fed. Appx. at 715-17.  As Plaintiff makes clear in his Response, he intends to pursue Claim Two only against Defendant CDOC and the John Doe Defendants in both their official and individual capacities.  *Response* [#119] at 3.

### b.    Fourteenth Amendment

Here, Plaintiff contends that while incarcerated in administrative segregation at CSP, he was limited to possessing two books.  Mere placement in a unit or prison with restrictive conditions does not, on its own, implicate a liberty interest.  *See Talley v. Hesse*, 91 F.3d 1411, 1413 (10th Cir. 1996); *Templeman*, 16 F.3d at 369.  When restrictive conditions associated with segregation are at issue, the Court necessarily looks to several factors set forth by the Tenth Circuit in *DiMarco* to determine whether such conditions constitute atypical and significant hardships in relation to the ordinary incidents of prison life.  *See Sandin*, 515 U.S. at 484.  This consideration includes whether the conditions complained of (1) further a legitimate penological interest; (2) are extreme; (3) inevitably increase the duration of a prisoner's sentence; and (4) are for an indefinite term.  *DiMarco*, 473 F.3d at 1342 (hereinafter, the "*DiMarco* factors").

As a preliminary matter, limitations on the number of books an inmate may possess are nothing unique.  In fact, it has been noted that where an inmate is allowed to possess

at least some books and also has access to books from the prison library, restrictions on the number or type of books an inmate may possess are not atypical. *See, e.g.*, *Hunt v. Sapien*, 480 F. Supp. 2d 1271, 1276 (D. Kan. 2007); *Dial v. Wiley*, No. 06-cv-01428-MSK-MEH, 2007 WL 2728349, at *7 (D. Colo. Sept. 18, 2007) (unpublished decision). Moreover, generally, prison regulations that limit the number of books a prisoner may posses do not implicate constitutional protection. *See Neal v. Lewis*, 414 F.3d 1244, 1248 (10th Cir. 2005). Here, Plaintiff does not contend that he could not check out books at the prison library, but only argues that he was dissatisfied with the type of books contained there. Moreover, Plaintiff acknowledges that he was allowed to possess two additional books and does not contend that there was any restriction on the type of those books.

Considering the first *DiMarco* factor, the Court notes that Plaintiff acknowledges that his placement at CSP was due to his security classification. *See Response* [#119] at 2. The Court also notes that pursuant to Defendant CDOC's policies, property restrictions are intended to encourage and obtain appropriate behavior through control and reinforcement [Docket No. 112-2].[7] Maintaining security is a legitimate penological interest. *See DiMarco*, 473 F.3d at 1342.

Considering the second *DiMarco* factor, the Court notes that while Plaintiff's conditions at CSP were more restrictive than his conditions at CCF, that does not by definition make them extreme. *See id.* at 1343. Given that Plaintiff was permitted to possess books and presumably had access to countless others at the law library, the Court cannot say that this restriction is extreme.

---

[7] The Court may take judicial notice of facility policies and regulations. *See Ray v. Aztec Well Servs. Co.*, 748 F.2d 888, 889 (10th Cir. 1984).

Considering the remaining *DiMarco* factors, Plaintiff has not alleged that his placement at CSP or limitation on the number of books he could possess while there increased the duration of his sentence or that such restriction or placement was indefinite. Neither factor appears to be at issue here because Plaintiff has not and cannot reasonably argue that (1) the book restriction increases the length of his incarceration given that he is serving a life sentence or (2) his confinement at CSP with certain book limitations should be viewed as indefinite given the fact that he is no longer placed there nor bound by the book restriction at issue.   The absence of allegations related to these two factors is significant and arguably prohibits any finding that the book restriction at CSP is atypical. *See Townsend v. Fuchs*, 522 F.3d 765, 772 (7th Cir. 2008); *Saleh v. BOP*, No. 05-cv-02467-PAB-KLM, 2010 WL 5464295, at *13-16 (D. Colo. Nov. 23, 2010), *adopted by* 2010 WL 5464294 (Dec. 29, 2010) (unpublished decisions); *Rezaq v. Nalley*, No. 07-cv-02483-LTB-KLM, 2010 WL 5157317, at *14 (D. Colo. Aug. 17, 2010), *adopted by* 2010 WL 5157313 (Dec. 14, 2010) (unpublished decisions).

Simply, the book restrictions Plaintiff was under while incarcerated in segregation at CSP do not implicate a protected interest.   As such, no particular process, via the Fourteenth Amendment, is due.   *See generally Templeman*, 16 F.3d at 369.   Even if that were not the case, Plaintiff has not alleged what process he was entitled to but did not receive.   His claim fails for both reasons.   Therefore, this challenge must be dismissed against Defendants in any capacity.   This dismissal necessarily means that Plaintiff has no monetary remedy for any alleged violation contained in Claim Two.   *See also supra* note 6.

Accordingly, given the conclusions set forth above, the Court RECOMMENDS that

Claim Two go forward only as to Plaintiff's RLUIPA claim asserted against Defendant CDOC seeking injunctive and declaratory relief.

### E.    Claim Three

Claim Three relates to whether Defendant CDOC's policy in restricting inmates in segregation at CSP from possessing more than two magazines and subscriptions at a time violates RLUIPA and the Fourteenth Amendment.

### 1.    RLUIPA (Against Defendant CDOC for injunctive and declaratory relief only)

While the Court previously found that Plaintiff had not alleged a burden of sufficient magnitude to state a claim under RLUIPA in relation to Claim Three, the Court finds that the Amended Complaint cures that deficiency.    Specifically, Plaintiff contends that "[m]agazines provide the Plaintiff religious content he cannot obtain from any other source, such as commentary on current events and how they impact his religion. . . .   The Plaintiff needs to protect himself against heresy, a damnenable [sic] offense in his religion.   The restrictions in this claim prevent him from the study he requires to protect his soul." *Amended Complaint* [#103] at 6.   At this stage, the RLUIPA claim should go forward.[8]

### 2.    Fourteenth Amendment (Against Defendants CDOC Jones, Brown, Hildebrand and the John Doe Defendants for injunctive and declaratory relief in their official capacities and for monetary

---

[8] As noted earlier, it is not appropriate at this stage to determine whether Defendant CDOC's restrictions may be reasonably related to a compelling government interest or constitute the least restrictive means to carry out any alleged compelling government interest pursuant to 42 U.S.C. § 2000cc-1(a).   While Defendant CDOC may ultimately be successful in justifying its magazine restrictions, additional information beyond the Amended Complaint is necessary to do so.

**relief in their individual capacities)**

### a.      Personal Participation

As noted above in Claims One and Two, although Plaintiff re-asserted Claim Three against Defendants Jones, Brown and Hildebrand, the Amended Complaint fails to cure the pleading deficiencies associated with alleging these Defendants' personal participation. This recognition necessarily means that constitutional claims asserted against Defendants Jones, Brown and Hildebrand in either their official and individual capacities must be dismissed.  *See, e.g.*, *Dawson*, 266 Fed. Appx. at 715-17.   As Plaintiff makes clear in his Response, he intends to pursue Claim Three only against Defendant CDOC and the John Doe Defendants in both their official and individual capacities.  *Response* [#119] at 3.

### b.      Fourteenth Amendment

The same analysis which pertained to Claim Two in relation to book restrictions applies here in relation to magazine restrictions.  The parties have not identified any reason why the magazine restrictions should be treated differently from the book restrictions. Simply, the magazine restrictions at CSP do not implicate a protected interest.  As such, no particular process, via the Fourteenth Amendment, is due.  *See generally Templeman*, 16 F.3d at 369.  Even if that were not the case, Plaintiff has not alleged what process he was entitled to but did not receive.  His claim fails for both reasons.  Therefore, this challenge must be dismissed against Defendants in any capacity.   This dismissal necessarily means that Plaintiff has no monetary remedy for any alleged violation contained in Claim Three.  *See also supra* note 6.

Accordingly, given the conclusions set forth above, the Court RECOMMENDS that

Claim Three go forward only as to Plaintiff's RLUIPA claim asserted against Defendant CDOC seeking injunctive and declaratory relief.

### F.    Claim Four

Claim Four relates to whether the alleged denial of 100% grape juice and unleavened bread for purposes of permitting Plaintiff to take communion in his cell violates RLUIPA and the First and Fourteenth Amendments.

### 1.    RLUIPA (Against Defendant DCOC for injunctive and declaratory relief only)

The RLUIPA claim associated with Claim Four survived the prior motion to dismiss. Accordingly, it is not at issue here and remains for further adjudication against Defendant CDOC seeking injunctive relief only.  *See also supra* notes 3 & 7.

### 2.    First and Fourteenth Amendments (Against Defendants CDOC, McCormick, Hildebrand and DeCesaro in their official capacities for injunctive and declaratory relief only)

Defendants, and particularly Defendant McCormick, were previously granted qualified immunity in relation to Plaintiff's constitutional challenge due to the fact that no clearly established law put Defendants on notice that the deprivation of 100% grape juice and unleavened bread in this circumstance was a constitutional violation.  *Order* [#95] at 6-7; *Recommendation* [#75] at 12-16.  As noted earlier, that decision stands.  Therefore, the only constitutional portion of this claim that remains to be adjudicated is whether Defendants CDOC, McCormick, Hildebrand and DeCesaro in their official capacities violated either Plaintiff's First or Fourteenth Amendment rights such that Plaintiff may be

28

entitled to injunctive or declaratory relief. Plaintiff does not assert a claim against the John Doe Defendants in Claim Four.

### a.      Personal Participation

As noted above in Claims One, Two and Three, although Plaintiff re-asserted Claim Four against Defendants Hildebrand and DeCesaro, the Amended Complaint fails to plead sufficient allegations to allege these Defendants' personal participation.[9]   Specifically, claims merely involving an individual's participation in the grievance process are insufficient to establish his/her personal participation in the alleged violation. *See Whitington*, 307 Fed. Appx. at 193.   This recognition necessarily means that constitutional claims asserted against Defendants Hildebrand and DeCesaro in their official capacities must also be dismissed. *See, e.g.*, *Dawson*, 266 Fed. Appx. at 715-17.   As such, the Court considers only whether Defendants CDOC and McCormick in her official capacity may be liable for the alleged constitutional violations associated with this claim.

### b.      First Amendment

The First Amendment aspect of Claim Four appears to raise a general allegation that Defendant CDOC's communion policies generally and its communion policies pertaining to inmates in segregation specifically violate Plaintiff's right to free exercise of religion. "In order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry. First, the prisoner-plaintiff must first show that a prison regulation 'substantially burdened . . . sincerely-held religious beliefs.'" *Kay v. Bemis*, 500

---

[9] The Court previously held that Plaintiff had alleged sufficient direct action of Defendant McCormick to satisfy the personal participation requirement as to her. *Recommendation* [#75] at 12.

F.3d 1214, 1218 (10th Cir. 2007) (quoting *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)).  "Consequently, '[t]he first questions in any free exercise claim are whether the plaintiff's beliefs are religious in nature, and whether those religious beliefs are sincerely held.'" *Id.* (quoting *Snyder v. Murray City Corp.*, 124 F.3d 1349, 1352 (10th Cir. 1997)). "Second, prison officials-defendants may 'identif[y] the legitimate penological interests that justif[ied] the impinging conduct.'"  *Id.* (quoting *Boles*, 486 F.3d at 1182).  The Court then balances the factors articulated in *Turner v. Safely*, 482 U.S. 78 (1987), to evaluate whether the regulation is reasonable.   These factors are:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Id.* at 1219 (quoting *Boles*, 486 F.3d at 1181) ("*Turner v. Safely*" factors).

As noted above, Plaintiff is apparently challenging CDOC regulations and/or policies which interfere with his ability to take communion in an individual setting and which do not provide for the provision of 100% grape juice and unleavened bread, which he alleges are necessary for him to take communion in order to practice Christian Separatism.  *See Amended Complaint* [#102] at 7.  These allegations minimally satisfy the first element of a free exercise claim, namely that CDOC's regulations and/or policies substantially interfere with Plaintiff's sincerely held religious beliefs.

The burden then shifts to Defendants CDOC and McCormick to identify a legitimate penological interest in relation to the restrictions.  As part of the analysis on the second

element of a free exercise claim, the Court must consider the *Turner v. Safely* factors. This analysis cannot be done at this stage because it requires consideration of facts and information not yet in evidence. *See, e.g.*, *Reid*, 2009 WL 1537879, at *6. Accordingly, the Court recommends that Plaintiff's First Amendment free exercise claim asserted against Defendants CDOC and McCormick in her official capacity go forward.

### b.    Fourteenth Amendment

In my previous Recommendation, I noted that despite Plaintiff's reference to the Fourteenth Amendment in relation to this claim, Plaintiff failed to make sufficient allegations that would support any type of Fourteenth Amendment claim. *Recommendation* [#75] at 16 n.6. Apart from providing further detail in relation to this claim, Claim Four reads substantially as it did in the previous Complaint. *Compare Amended Complaint* [#102] at 7, *with Complaint* [#44] at 11. Accordingly, the Court's prior rejection of the application of the Fourteenth Amendment to this claim operates as the law of the case. Moreover, it is appropriate for the Court to ignore the legal labels provided by Plaintiff and address his claims in a manner more appropriate for resolution. *Castro*, 450 U.S. at 381. As I did in my prior recommendation, the Court chooses to do so here and recommends that the claim go forward only in relation to Plaintiff's RLUIPA and First Amendment claims.

Accordingly, given the conclusions set forth above, the Court RECOMMENDS that Claim Four go forward only as to Plaintiff's RLUIPA claim asserted against Defendant CDOC and his First Amendment free exercise claim asserted against Defendants CDOC and McCormick in her official capacity seeking injunctive and declaratory relief.

### G.    Claim Five

Claim Five relates to whether Defendant CDOC's classification of Plaintiff as a

31

member of security threat group allegedly based on his political and religious beliefs violates RLUIPA and the Fourteenth Amendment.

### 1.    RLUIPA (Against Defendant CDOC for injunctive and declaratory relief only)

While the Court previously found that Plaintiff had not alleged a religious exercise sufficient under RLUIPA in relation to Claim Five, the Court finds that the Amended Complaint cures that deficiency.   As a preliminary matter, the Act defines "religious exercise" as "includ[ing] any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7).   A precursor to the present Act, the Religious Freedom Restoration Act, declared unconstitutional as applied to the states in *City of Boerne v. Flores*, 521 U.S. 507 (1997), required that the religious exercise protected by the statute be a "central tenet" of the religion. *See Hammons*, 2006 WL 353448, at *2 (discussing RFRA and its "central tenet" requirement).   RLUIPA was passed by Congress as a reaction to *City of Boerne*, and Congress intentionally broadened the definition of "religious exercises" protected by the new Act.   *Id.*

Here, Plaintiff contends that the religious exercise at issue is the practice of his Christian Separatist beliefs generally. *Amended Complaint* [#103] at 8.   Although arguably vague, I find that Plaintiff's allegations satisfy the religious exercise requirement at this stage.

In relation to the substantial burden of a sincerely held belief requirement, which the Court did not previously address in my prior Recommendation, I find that Plaintiff has also pled minimally sufficient information.   Specifically, Plaintiff contends that classification as an STG member because of his beliefs substantially interferes with his ability to practice

his faith because (1) Christian Separatism does not condone criminal acts or deviance of the nature that would justify an STG classification such that the classification "places a substantial burden upon [Plaintiff's] beliefs with intense pressure to change his beliefs to avoid persecution"; and (2) the fear of segregation and the denial of opportunities available to other inmates due to the classification "wears the Plaintiff down and serves as a constant unyielding temptation to renounce his faith and obtain the advantages and treatment other inmates are afforded." *Id.* At this stage, the RLUIPA claim should go forward.[10]

### 2. First and Fourteenth Amendments (Against Defendant CDOC and the John Doe Defendants for injunctive and declaratory relief in their official capacities and for monetary relief against the John Doe Defendants in their individual capacities)[11]

#### a. First Amendment

In his Response to the Motion to Dismiss, Plaintiff characterizes his First Amendment claim in relation to Claim Five as a retaliation claim, i.e., that Defendants' classification of him and placement in segregation amount to retaliation against him on the basis of the exercise of a constitutional right. *See Response* [#119] at 8. "[T]o establish

---

[10] *See supra* notes 3 & 7.

[11] Other than the John Doe Defendants, Plaintiff names no individual Defendants in Claim Five. Therefore, the Court assumes that Plaintiff intended to pursue the constitutional allegations contained in Claim Five against Defendant CDOC and the John Doe Defendants. To the extent that Plaintiff contends that he now knows that one of the John Doe Defendants referenced in Claim Five is named Jay Kirby, see *Response* [#119] at 3, he has not moved to amend his Amended Complaint to add this Defendant nor has this individual been served. To the extent that either the First or Fourteenth Amendment claims survive against the John Doe Defendants in their official or individual capacities, the Court will address Mr. Kirby's responsibility at that point.

a First Amendment retaliation claim, a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action." *Baldauf v. Hyatt*, No. 01-cv-01315-REB-CBS, 2008 WL 280839, at *7 (D. Colo. Jan. 31, 2008) (unpublished decision) (quoting *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004)). However, an inmate is not "inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he is engaged in protected activity." *Peterson v. Shanks,* 149 F.3d 1140,1144 (10th Cir.1998).

To prevail on the causation element of a claim for retaliation, Plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers . . . would not have taken place." *Id.* (citing *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990)). That is, "it is imperative that [a] plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice; plaintiffs must, rather, allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("[T]he inmate must allege more than his personal belief that he is the victim of retaliation.").

In relation to the first element, Plaintiff has minimally pled facts which suggest that he was engaged in protected conduct, namely the practice of his religion and the espousal of certain political ideals. I also find that Plaintiff has minimally pled facts which satisfy the second element of the retaliation test. While it is unclear at this time whether an STG classification can be construed as an adverse action, it can reasonably be argued that Plaintiff's placement in segregation constitutes an adverse action. In relation to the third

34

and final element, although Plaintiff's classification as an STG member and placement in segregation may have been prompted by other reasons, e.g., disciplinary infractions, gang membership, the underlying crime, etc., taking Plaintiff's allegations as true, he may have been placed in segregation for his political and religious beliefs. Accordingly, I find that he has plausibly supplied a causal link between his conduct and the punishment. If, however, upon discovery it is revealed that Plaintiff's alleged adverse treatment came about as a result of other nonprotected conduct, such that regardless of the exercise of any protected conduct the action would have occurred, the causal connection will be vitiated. *See Baldauf*, 2008 WL 280839, at *8 (citing *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996)).

Because Plaintiff has stated a valid claim, it is necessary to consider whether the individually named Defendants are entitled to qualified immunity for claims asserted against them in their individual capacities. Here, the only individually named Defendants are the John Doe Defendants. The Court's analysis of qualified immunity in the context of a motion to dismiss involves two inquiries. One part of the inquiry is whether the facts taken in the light most favorable to Plaintiff sufficiently allege a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id.* However, "if a violation could be made out on a favorable view of the parties' submissions, [an additional inquiry] is to ask whether the right was clearly established." *Id.* In *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808 (2009), the Supreme Court held that a court may review these factors in any order, using its discretion to determine which of the factors should be reviewed first in light of the circumstances of

35

the case.  *Id.* at 818.

As noted, Plaintiff has minimally pled the existence of a potential retaliation claim. Nevertheless, the John Doe Defendants may be entitled to qualified immunity if it was not clearly established that the conduct at issue here is unconstitutional.  The question of whether a right was clearly established must be addressed in "the context of the particular case before the court, not as a general, abstract matter."  *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005).  That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in the defendant's position] that his conduct was unlawful in the situation he confronted."  *Saucier*, 533 U.S. at 202.  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as the plaintiff maintains."  *Cruz v. City of Laramie, Wyo.*, 239 F.3d 1183, 1187 (10th Cir. 2001) (quoting *Medina v. City and County of* Denver, 960 F.2d 1493, 1498 (10th Cir. 1992)).  In other words, there must be ample caselaw in which a constitutional violation was found based upon similar conduct.  *See Callahan v. Millard County*, 494 F.3d 891, 903 (10th Cir. 2007).

Here, taking Plaintiff's allegations as true as I must on a motion to dismiss, Plaintiff has not alleged that the John Doe Defendants committed a violation of clearly established law.  First, the question is not as general as whether it was clearly established that prison officials cannot take adverse actions against a prisoner on the basis of his political or religious beliefs.  *Saucier*, 533 U.S. at 201 ("[W]hether the right was clearly established . . . must be undertaken in light of the specific context of the case, not as a broad general proposition.").  It is not enough to argue that the law clearly establishes that the First

36

Amendment protects religious expression. *See id.* at 202 (noting that "'the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right.'" (citation omitted)).  Rather, the question is more specific as to whether a prison official would know that classifying an inmate with STG status, which necessarily imposes restrictions on his religious or political practices, is a constitutional violation.  Specificity is necessary because "[t]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [official] conduct. . . .  If the officer's mistake as to what the law requires is reasonable, the officer is entitled to the immunity defense." *Id.* at 205.  After all, "qualified immunity precludes the imposition of liability for 'all but the *plainly incompetent* or those who knowingly violate the law.'"  *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1251 (10th Cir. 2003) (citation omitted).

Second, Plaintiff bears the burden to provide appropriate caselaw to show that it has been clearly established that classifications of this nature are unconstitutional. *See Guffey v. Wyatt*, 18 F.3d 869, 871 (10th Cir. 1994).  Plaintiff has not done so.  Nor arguably could he given that the law in the Tenth Circuit recognizes that inmates have no constitutional right to a particular classification and, in the reverse, no right not to receive a restrictive classification. *Jenner v. Zavaras*, 339 Fed. Appx. 879, 881-82 (10th Cir. July 31, 2009) (unpublished decision); *Sparks v. Foster*, 241 Fed. Appx. 467, 471 (10th Cir. June 19, 2007) (unpublished decision); *Villarreal v. Harrison*, 201 F.3d 449 (table) (10th Cir. Nov. 23, 1999) (unpublished decision).  Moreover, it cannot be disputed that "[a] prisoner's right to exercise his religion is not absolute." *Hall v. Maynard*, 989 F.2d 507 (table) (10th Cir. Mar.

37

12, 1993) (unpublished decision) (citing *Mosier v. Maynard*, 937 F.2d 1521, 1525 (10th Cir.

1991)).  To that end, classifications and/or restrictions that interfere with religious practices

have been consistently upheld in the prison context.  *See, e.g.*, *Ciempa v. Jones*, 745 F.

Supp. 2d 1171, 1188-90 (N.D. Okla. 2010) (citing cases from this Circuit and others and

recognizing that religious groups espousing racial supremacy may be subject to restrictive

classification).

Until classification decisions of this nature have been invalidated, the John Doe

Defendants, including any currently unnamed Defendants such as Mr. Kirby, are entitled

to qualified immunity.  Therefore, I recommend that Plaintiff's First Amendment retaliation

claim in Claim Five against the John Doe Defendants in their individual capacities be

dismissed.  That is not to say that Plaintiff has no right of recovery.  He may proceed as to

his retaliation claim against Defendant CDOC and the John Doe Defendants in their official

capacities and seek injunctive and declaratory relief.[12]

### b.    Fourteenth Amendment

In relation to Plaintiff's characterization of Claim Five as a Fourteenth Amendment

claim, the Court exercises its discretion to recommend dismissal under this constitutional

provision.  *See Castro*, 450 U.S. at 381.  First, in his Response to the Motion to Dismiss,

---

[12] Because the Court recommends that this claim go forward as an official capacity claim only, to the extent that Plaintiff knows the identity of any John Doe Defendant, he could arguably pursue his claim against those individuals.  The Court passes no judgment as to the viability of such an approach, but notes that the time for amendment has passed and amendment appears unnecessary because the claim remains pending against Defendant CDOC.  Further, the Court notes that in relation to Mr. Kirby, on these pleadings, Plaintiff has failed to provide allegations that would support finding that Mr. Kirby personally participated in the alleged violation. Personal participation is necessary to establish liability against a defendant in both his official and individual capacities.  *See Ajaj v. BOP*, No. 08-cv-02006-MSK-MJW, 2011 WL 902440, at *4 n.6 (D. Colo. Mar. 10, 2011) (unpublished decision).

Plaintiff does not address Claim Five in relation to the Fourteenth Amendment, appearing to concede that it involves other statutory or constitutional elements.  Second, Plaintiff has simply not pled enough information to raise a Fourteenth Amendment claim in this instance. For example, to the extent that Plaintiff meant to allege that he has a liberty interest in avoiding a certain classification which led to his segregation, he has failed to describe the totality of the conditions experienced by him while in confinement in segregation.   In addition, he has failed to allege that he was deprived of an appropriate level of process. *See, e.g.*, *Sparks*, 241 Fed. Appx. at 471 (classification); *Kettering v. Chaves*, No. 07-cv-01575-CMA-KLM, 2008 WL 4877005, at *7-9 (D. Colo. Nov. 12, 2008) (unpublished decision) (segregation).

To the extent that Plaintiff meant to allege that his classification or placement in segregation amounts to an equal protection violation, he has failed to plausibly allege that he was treated differently from similarly situated individuals.  For example, it has long been recognized that a prisoner's "claim that there are no relevant differences between him and other inmates that reasonably might account for their different treatment is not plausible or arguable."  *Templeman*, 16 F.2d at 371.  Moreover, this claim is amply addressed by RLUIPA and the First Amendment such that if Plaintiff is entitled to relief, relief will be afforded.  Therefore, I recommend that Plaintiff's Fourteenth Amendment claim in relation to Claim Five be dismissed.

In summary, the dismissal of Plaintiff's Fourteenth Amendment claim against all Defendants as well as the dismissal of Plaintiff's First Amendment Claim against the John Doe Defendants in their individual capacities necessarily means that Plaintiff has no monetary remedy for any alleged violation contained in Claim Five.  Accordingly, given the

conclusions set forth above, the Court RECOMMENDS that Claim Five go forward only as to Plaintiff's RLUIPA claim asserted against Defendant CDOC and his First Amendment retaliation claim asserted against Defendant CDOC and the John Doe Defendants in their official capacities seeking injunctive and declaratory relief.[13]

## IV. Conclusion

Accordingly, the Court respectfully **RECOMMENDS** that the Motion to Dismiss be **GRANTED in part and DENIED in part** as follows:

(1) Claim One should proceed only as to the RLUIPA claim asserted against Defendant CDOC for injunctive or declaratory relief;

(2) Claim Two should proceed only as to the RLUIPA claim asserted against Defendant CDOC for injunctive and declaratory relief;

(3) Claim Three should proceed only as to the RLUIPA claim asserted against Defendant CDOC for injunctive and declaratory relief;

(4) Claim Four should proceed only as to the RLUIPA claim asserted against Defendant CDOC and as to the First Amendment free exercise claim asserted against Defendants CDOC and McCormick in her official capacity for injunctive and declaratory relief; and

(5) Claim Five should proceed only as to the RLUIPA claim asserted against Defendant CDOC and as to the First Amendment retaliation claim asserted against

---

[13] Because the only claims that survive are official capacity claims, and such claims do not permit monetary recovery, no monetary damages claims remain, whether they be stated as requests for nominal, compensatory or punitive damages. *See generally Hill v. Kemp*, 478 F.3d 1236, 1255-56 (10th Cir. 2007); *Ambus v. Granite Bd. of Educ.*, 995 F.2d 992, 994 (10th Cir. 1993).

Defendant CDOC and the John Doe Defendants in their official capacities for injunctive and declaratory relief.

**All other Defendants, claims and forms of relief should be dismissed.**

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  April 7, 2011

BY THE COURT:

  s/ Kristen L. Mix
Kristen L. Mix
United States Magistrate Judge