**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No.  09-cv-00537-WJM-KLM

JACOB IND,

      Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS;
SUSAN JONES;
MARY NELL MCCORMICK;
MCCAIN HILDEBRAND;
RENE OLIVETT;
JAMES W. BROWN;
ANTHONY DECESARO; and
UNKNOWN EMPLOYEES OF CSP AND CDOC,

      Defendants.

_____

**ORDER ADOPTING THE RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**
_____

This matter is before the Court on the April 7, 2011 Recommendation by U.S. Magistrate Judge Kristen L. Mix (ECF No. 137) (the "Recommendation") that Defendants' Motion to Dismiss Plaintiff's Amended Complaint be granted in part and denied in part.  The Recommendation is incorporated herein by reference.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

## I.  BACKGROUND

The facts relevant to a resolution of the Defendants' Motion to Dismiss are detailed in the Recommendation.  Briefly, Plaintiff is a *pro se* prisoner currently incarcerated at the Centennial Correctional Facility ("CCF") in Canon City, Colorado.

(Motion (ECF No. 112 at 1 n.1).  At the time of the filing of the lawsuit, Plaintiff was

incarcerated at Colorado State Penitentiary ("CSP"), a maximum-security/administrative

segregation facility that is classified as "Level V," the highest security level within the

Colorado Department of Corrections ("CDOC") system.  *See* Colo. Rev. Stat. §

17-1-104.3.  Defendants are various employees of the CDOC.  The instant lawsuit

arises from Plaintiff's claims that CDOC policies unconstitutionally inhibit his ability to

practice his religion, and that he has been unlawfully given a security classification

because of his beliefs.[1]

Plaintiff's operative Complaint for purposes of resolving the Motion to Dismiss

was filed on October 25, 2010.  (ECF No. 103.)  A prior motion to dismiss was granted

in part and denied in part, and Plaintiff was given leave to amend his pleadings.  (*See*

Order (ECF No. 95); Recommendation  (ECF No. 75)).  The Amended Complaint at

issue here was Plaintiff's attempt to cure pleading deficiencies identified with his prior

Complaint.  (ECF No. 44.)

Plaintiff's Amended Complaint alleges violations of federal constitutional law and

brings this action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and

Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq.*  (Am.

Comp.)  Plaintiff also alleges violations of state constitutional law and Colo. Rev. Stat. §

---

[1]     Plaintiff identifies himself as a follower of "Christian Separatism," a group within
the larger religion known as "Christian Identity."  (Amended Complaint (ECF No. 103 at 3)).
This religion has been described as "rest[ing] upon White Supremacy principles, teaching that
all other races and religions are inferior."  *Ind v. Wright*, 52 Fed. App'x 434, 436 (10th Cir. 2002)
(unpublished decision); *see also Rooks v. Zavares*, No. Civ. 99-B-631, 2001 WL 34047959, at
*1 (D. Colo. Jan. 24, 2001) (unpublished decision) (describing beliefs of Christian Identity
followers).

17-42-101. Specifically, Plaintiff asserts five claims for relief against various

Defendants, including "Unknown Employees of CSP and CDOC" (the "John Doe

Defendants"):

> Claim One: The ban on religious correspondence courses at CSP violates RLUIPA, the Fourteenth Amendment of the United States Constitution, Colo. Rev. Stat. § 17-42-101, and the Colorado Constitution Art. II, Secs. 3 & 4. (Am. Comp. at 4.) This claim is asserted against Defendant CDOC and against Defendants Jones, McCormick, Hildebrand, and the John Doe Defendants in their official and individual capacities.

> Claim Two: The book limits imposed at CSP violate RLUIPA, the Fourteenth Amendment of the United States Constitution, Colo. Rev. Stat. § 17-42-101, and the Colorado Constitution Art. II, Secs. 3 & 4. (Am. Comp. at 5.) This claim is asserted against Defendant CDOC and against Defendants Jones, Olivett, Hildebrand, and the John Doe Defendants in their official and individual capacities.

> Claim Three: The magazine limits imposed at CSP violate RLUIPA, the Fourteenth Amendment of the United States Constitution, Colo. Rev. Stat. § 17-42-101, and the Colorado Constitution Art. II, Secs. 3 & 4. (Am. Comp. at 6.) This claim is asserted against Defendant CDOC and against Defendants Jones, Brown, Hildebrand, and the John Doe Defendants in their official and individual capacities.

> Claim Four: The deprivation of the opportunity to take communion violates the First and Fourteenth Amendments of the United States Constitution, RLUIPA, Colo. Rev. Stat. § 17-42-101, and the Colorado Constitution Art. II, Sec. 4. (Am. Comp. at 7.) This claim is asserted against Defendant CDOC and against Defendants McCormick, Hildebrand, and DeCesaro in their official and individual capacities.

> Claim Five: The classification of Plaintiff as a member of a Security Threat Group ("STG") based upon his political and religious beliefs violates the First and Fourteenth Amendments to the United States Constitution, RLUIPA, Colo. Rev. Stat. § 17-42-101, and the Colorado Constitution Art. II, Sec. 4. (Am. Comp. at 8.) This claim is asserted against Defendant CDOC and against the John Doe Defendants in their official and individual capacities.

Plaintiff's Amended Complaint seeks the following relief:

> United States Constitutional Violations: Injunctive and declaratory relief from Defendants in both their individual and official capacities and punitive and nominal damages in their individual capacities.

> State Law and Constitutional Violations: Declaratory relief from Defendants in their

3

individual and official capacities.

RLUIPA Violations: Injunctive and Declaratory relief, as well as nominal, compensatory and punitive damages from Defendants in their individual and official capacities.

Defendants' instant Motion to Dismiss requests that the Court dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for lack of jurisdiction over the subject matter, failure to state a claim upon which relief can be granted, and qualified immunity. (Motion at 8-15.)  Defendants further contend: (1) Plaintiff's transfer out of CSP mooted Claims Two and Three (*Id*. at 7-8); (2) Plaintiff failed to cure pleading deficiencies associated with his prior Complaint (*Id*. at 4-7, 15); and (3) Plaintiff erroneously realleged claims that were previously dismissed with prejudice by the Court.  (*Id*.)

On the April 7, 2011, the Magistrate Judge issued her Recommendation that Defendants' Motion to Dismiss Plaintiff's Amended Complaint be granted in part and denied in part.   (ECF No. 137.)  Plaintiff filed timely objections to the Recommendation (ECF No. 138), and Defendants have responded to those objections.  (ECF No. 145.)

 For the reasons stated below, all of Plaintiff's objections to the Recommendation are OVERRULED, the Magistrate Judge's Recommendation is ADOPTED in its entirety, and Defendants' Motion to Dismiss Plaintiff's Amended Complaint is GRANTED in part and DENIED in part.

## II.  LEGAL STANDARD

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district court judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly

4

objected to." Fed. R. Civ. P. 72(b)(3).  In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id*.

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking."  *See Basso*, 495 F.2d at 909.

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however, the court may consider matters outside the pleadings without transforming the motion into one for summary judgment.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other

5

documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (*citing Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (citation omitted).

The concept of "plausibility" at the dismissal stage refers not to whether the allegations are likely to be true; the court must assume them to be true. *See Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192-93 (10th Cir. 2009). The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

Further, in considering the magistrate judge's recommendation in the instant case, the Court is also mindful of Plaintiff's *pro se* status, and accordingly, reads his pleadings and filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

6

However, such liberal construction is intended merely to overlook technical formatting errors and other defects in Plaintiff's use of legal terminology and proper English.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  *Pro se* status does not relieve Plaintiff of the duty to comply with various rules and procedures governing litigants and counsel or the requirements of the substantive law and, in these regards, the Court will treat Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court.  *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

## III.  ANALYSIS

The Magistrate Judge's Recommendation contains numerous findings and conclusions.  (Rec. at 40-41.)  Neither party objects to the majority of these findings. Plaintiff, however, does object to the following findings: (1) Plaintiff is not entitled to monetary relief for his individual capacity claims brought pursuant to RLUIPA; (2) Plaintiff is not entitled to relief for his claims brought pursuant to the Fourteenth Amendment; and (3) Defendants are entitled to qualified immunity with respect to the individual capacity claims brought under Plaintiff's Claim Five.[2]  The Court will review *de novo* each portion to which a specific objection was made.  Otherwise, the Court will review the Recommendation for clear error.  Fed. R. Civ. P. 72(b)(3).

**A.    Plaintiff's Objections**

**1.    Monetary Relief for Individual Capacity Claims under RLUIPA**

The Magistrate Judge recommends the dismissal of: (1) any RLUIPA claim

_____

[2]    Defendants have not objected to the Magistrate Judge's Recommendation.

asserted against any Defendant in their individual capacity; and (2) any request for monetary damages related to any RLUIPA claim, including any request for nominal, compensatory, or punitive damages.  (Rec. at 7-9.)  Plaintiff objects to this recommendation.  (Obj. at 1-2.)

To the extent that Plaintiff objects to the Magistrate Judge's finding that any RLUIPA claims against the individual Defendants in their individual capacities should be dismissed, the law of the case doctrine makes clear that Plaintiff can no longer pursue these claims.  "Under the law of the case doctrine, findings made at one point during litigation become the law of the case for subsequent stages of that same litigation." *United States v. Webb*, 98 F.3d 585, 587 (10th Cir. 1996).  In its September 30, 2010 Order, the Court dismissed Plaintiff's RLUIPA claims against the individual Defendants with prejudice.  (Order at 9-10.)  The law of the case, therefore, operates as binding legal precedent, and nothing contained in Plaintiff's Amended Complaint or Response overcomes the legal effect of applying this doctrine to this case at this juncture of the proceedings.  *See Gordon v. Arellano*, No. 08-cv-02538, 2010 WL 1790410, at *5 (D. Colo. May 3, 2010) (unpublished decision) (*citing Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1140 (10th Cir. 2009)).  Accordingly, the Court dismisses with prejudice all RLUIPA claims asserted against any Defendant in their individual capacity.

Furthermore, to the extent that Plaintiff seeks monetary damages under RLUIPA, the Court has already held that the statute does not allow recovery for monetary damages.  (Order at 9-10; Rec. at 7-8) (analyzing which damages are recoverable under RLUIPA.))  This holding also operates as the law of the case, and Plaintiff can no longer pursue these claims.  Moreover, the United States Supreme Court has recently

8

held that States did not consent to waive their sovereign immunity to private suits for monetary damages under RLUIPA because no statute expressly and unequivocally included such a waiver. *See Sossamon v. Texas,* 131 S.Ct. 1651, 1663 (2011).  As such, any claim for money damages under RLUIPA against the State or any state agency (such as CDOC) is barred by sovereign immunity. *Id*.  Accordingly, the Court dismisses with prejudice any request for monetary damages associated with any alleged RLUIPA violation.

### 2.    Fourteenth Amendment Claims

The Magistrate Judge recommends dismissal of Plaintiff's Fourteenth Amendment Claims.  (Rec. at 40-41.)  Plaintiff objects to portions of these findings, contending that he was denied: (1) due process regarding his access to correspondence courses, books, magazines, and religious rights; and (2) equal protection of the law relating to his inability to take communion individually in his cell. (Obj. at 3-6.)

### a.    Due Process

To state a Fourteenth Amendment due process claim, Plaintiff must allege facts that satisfy two elements.  *See Bd. of Regents v. Roth*, 408 U.S. 564, 568-71 (1972). First, he must show that he was deprived of a protected liberty or property interest.  *See id.; see also Veile v. Martinson*, 258 F.3d 1180, 1184-85 (10th Cir. 2001).  The liberty or property interest factor is a threshold issue.  *See Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994) (noting that, without a protected interest, "no particular process [is] constitutionally required").  Second, if the threshold issue is satisfied, Plaintiff must

show that he was not afforded the appropriate level of process.  *See Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1135 (10th Cir. 1994).

        **i.**      **Correspondence Courses**

Plaintiff objects to the Magistrate Judge's finding that Defendants' correspondence course restrictions did not deprive him of a liberty interest.  (Obj. at 3-4.)

For prisoners, a liberty interest exists only where a specific prison action imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Connor*, 515 U.S. 472, 484 (1995).  Thus, the relevant question here is whether the alleged deprivation imposes an "atypical and significant hardship" on the prisoner.[3]  *Id.* at 484.

The Magistrate Judge found that Plaintiff was not deprived of a liberty interest due to Defendant's correspondence course restrictions.  (Rec. at 19-20.)  The Court agrees.  "A limitation on educational privilege, particularly to further a legitimate concern such as [a concern held by a] penal institution . . ., is not a denial of a federally-guaranteed right."  *Robinson v. Smith*, 982 F.2d 529 (Table) (10th Cir. Dec. 9, 1992) (unpublished decision) (noting that "[t]his circuit has never determined that prisoners enjoy an entitlement to educational or rehabilitative services, only to an environment non-threatening to mental and physical well being."); *see also Toevs v. Reid,* 646 F.3d 752, 756 (10th Cir. 2011) *(quoting Estate of DiMarco v. Wyo. Dep't of*

---

       [3]      Plaintiff also argues that the Magistrate Judge applied the wrong legal standard in analyzing Plaintiff's Fourteen Amendment Claims.  (Obj. at 3.)  The Court, however, has reviewed the relevant legal standards, and agrees with the Recommendation's analysis.  (Rec. at 19-22.)

*Corr., Div. of Prisons*, 473 F.3d 1334, 1342 (10th Cir. 2007)) ("[A]ny assessment must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts.").

The Court agrees with the Recommendation's finding that Defendants' correspondence course restrictions here were not atypical.  (Rec. at 20-21.)  Therefore, because Plaintiff did not allege the deprivation of a liberty interest as required to state a claim under the Fourteenth Amendment, this claim is dismissed with prejudice against all Defendants.

### ii.    Books and Magazines

The Magistrate Judge also found that the restrictions on Plaintiff's book and magazine possession did not implicate a protected liberty interest.  (Rec. at 23-25; 27.) Plaintiff objects.  (Obj. at 3-4.)

When restrictive conditions associated with segregation are at issue, the Court looks to several factors to determine whether such conditions constitute atypical and significant hardships in relation to the ordinary incidents of prison life.  *See DiMarco*, 473 F.3d at 1342 (hereinafter, the "*DiMarco* factors").  These factors include whether the conditions complained of: (1) further a legitimate penological interest; (2) are extreme; (3) inevitably increase the duration of a prisoner's sentence; and (4) are for an indefinite term.  *Id.*

The Court agrees with the Recommendation's finding that, under the *Dimarco* factors, the book and magazine restrictions Plaintiff was under while incarcerated in segregation at CSP did not constitute atypical and significant hardships.  (Rec. at 23-

25; 27.)  Restrictions on the number or type of books an inmate may possess are generally not atypical.  *See, e.g., Georgacarakos v. Wiley*, No. 07-cv-01712-MSK-MEH, 2010 WL 1291833, at *23 (D. Colo. Mar. 30, 2010) (unpublished decision); *Dial v. Wiley*, No. 06-cv-01428-MSK-MEH, 2007 WL 2728349, at *7 (D. Colo. Sept. 18, 2007) (unpublished decision).  And prison regulations that limit the number of books a prisoner may posses generally do not violate a constitutional protection.  *See Neal v. Lewis*, 414 F.3d 1244, 1248 (10th Cir. 2005).  These limitations logically extend to magazines as well.

Since the book and magazine restrictions here did not implicate a protected interest, no particular process was due.  Therefore, these claims are dismissed with prejudice against all Defendants.

### iii.    Religious Rights

The Magistrate Judge found, as well, that Plaintiff did not state a claim regarding his religious rights under the Fourteen Amendment because he did not adequately allege that he possessed a liberty interest in avoiding the prisoner classification which led to his segregation at CSP.  (Rec. at 38-39.)  Plaintiff objects to this finding.  (Obj. at 3-4.)  The Court agrees with the Magistrate Judge's Recommendation that Plaintiff has not pled enough information to raise a Fourteenth Amendment claim as to this issue. (Rec. at 38-39.)  Plaintiff has failed to describe the totality of the conditions experienced by him while in segregation, and has failed to allege that he was deprived of an appropriate level of process because he failed to adequately allege a protected interest regarding his religious rights while in segregation.  Therefore, no particular process was

due.  *See, e.g., Sparks*, 241 Fed. Appx. at 471 (classification); *Kettering v. Chaves*, No. 07-cv- 01575-CMA-KLM, 2008 WL 4877005, at *7-9 (D. Colo. Nov. 12, 2008) (unpublished decision) (segregation).  Accordingly, this claim is also dismissed with prejudice against all Defendants.

### b.    Equal Protection

The Magistrate Judge found that Plaintiff was not denied equal protection to the law under the Fourteenth Amendment due to his inability to take communion individually in his cell.  (Rec. at 31.)  Plaintiff objects and contends that he was denied equal protection because other inmates, belonging to different religions, were allowed to have their religious group practices accommodated in an individual setting.  (Obj. at 4.)  But apart from providing further detail regarding this claim, Claim Four in Plaintiff's Amended Complaint is substantially similar to Claim Four in his previous Complaint. (Compare Am. Comp. at 7, with Comp. at 11.)  In its September 30, 2010 Order, the Court dismissed Plaintiff's equal protection claim with prejudice.  (Order at 12.)  The dismissal of Plaintiff's Fourteenth Amendment equal protection claim operates as the law of the case, and Plaintiff's Fourteenth Amendment Equal Protection claim is also dismissed with prejudice.

### 3.    Qualified Immunity for the John Doe Defendants in their Individual Capacity under Claim Five

The Magistrate Judge further found that the individual Defendants were entitled to qualified immunity from the individual capacity claims asserted in Plaintiff's Fifth Claim of First Amendment retaliation because any alleged constitutional violation was not clearly established at the time of these Defendants' allegedly unlawful conduct.

(Rec. at 33-38.)  Plaintiff objects to this finding and argues that his constitutional rights were clearly established.  (Obj. at 4-6.)

When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff who must meet a heavy two-part burden.  *See Maestas v. Lujan*, 351 F.3d 1001, 1006-1007 (10th Cir. 2006).  The plaintiff must first establish that the defendant's actions violated a constitutional or statutory right.  *Id.*  If the plaintiff establishes a violation of a constitutional or statutory right, he must then demonstrate that the right at issue was clearly established at the time of the defendant's unlawful conduct such that a reasonable person in defendant's position would have known that his conduct violated that right.  *See Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in the defendant's position] that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

The Court concurs with the Magistrate Judge's finding that, while Plaintiff has pled the existence of a potential retaliation claim, the John Doe Defendants are entitled to qualified immunity.  (Rec. at 33-38.)  Simply put, Plaintiff has not alleged that the John Doe Defendants committed a violation of clearly established law.  Plaintiff has not demonstrated that a prison official would know that classifying an inmate with STG status, which necessarily imposes restrictions on his religious or political practices, is a constitutional violation.[4]  Moreover, Plaintiff has not cited any caselaw which would

---

[4]      Specificity is necessary because "[t]he concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular

support any finding by this Court that as of the time of the alleged unlawful conduct by these Defendants it had been clearly established that classifications of this nature were unconstitutional.  *See Guffey v. Wyatt*, 18 F.3d 869, 871 (10th Cir. 1994).  Rather, contrary to Plaintiff's assertions, the Tenth Circuit has consistently recognized that inmates do not have a constitutional right to a particular custodial classification.  *See Jenner v. Zavaras*, 339 Fed. Appx. 879, 881-82 (10th Cir. July 31, 2009) (unpublished decision); *Sparks v. Foster*, 241 Fed. Appx. 467, 471 (10th Cir. June 19, 2007) (unpublished decision).  And classifications and/or restrictions that interfere with religious practices have been consistently upheld in the prison context. *See, e.g., Ciempa v. Jones*, 745 F. Supp. 2d 1171, 1188-90 (N.D. Okla. 2010) (citing cases from this Circuit and others recognizing that religious groups espousing racial supremacy may be subject to restrictive classification).

  The John Doe Defendants, therefore, are entitled to qualified immunity. Accordingly, Plaintiff's First Amendment retaliation claim against the John Doe Defendants in their individual capacities under Claim Five is dismissed with prejudice.

**B. Findings Without Objection**

  Neither party has objected to the following Magistrate Judge's recommendations:

  (1) the dismissal of all official capacity claims asserted against the individual

    Defendants, in relation to Plaintiff's RLUIPA claims;

---

[official] conduct. . . . If the officer's mistake as to what the law requires is reasonable, the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205.  Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law."  *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001) (internal quotations and citations omitted).

(2)     the dismissal of all constitutional claims asserted against Defendants
        Jones, Olivett and Hildebrand, in either their official or individual
        capacities;

(3)     the dismissal of any state law or state constitutional claims or declaratory
        relief associated with such claims;

(4)     the dismissal of any constitutional claim contained in Claim Four as to any
        Defendant sued in his/her individual capacity due to qualified immunity;

(5)     the dismissal of constitutional claims contained in Claim Four asserted
        against Defendants Hildebrand and DeCesaro in their official capacities;

(6)     denying request to dismiss Plaintiff's RLUIPA claim asserted against
        Defendant CDOC for injunctive and/or declaratory relief under Claims One
        through Five;

(7)     denying request to dismiss Plaintiff's First Amendment free exercise claim
        contained in Claim Four asserted against Defendants CDOC and
        McCormick in her official capacity for injunctive and declaratory relief;

(8)     denying request to dismiss Plaintiff's First Amendment retaliation claim
        contained in Claim Five asserted against Defendants CDOC and the John
        Doe Defendants in their official capacity for injunctive and declaratory
        relief; and

(9)     denying motion to dismiss on the grounds that the CDOC's transfer of
        Plaintiff to CCF mooted his claims in relation to book and magazine
        limitations at issue.

The Court has reviewed these rulings of the Magistrate Judge and finds no clear

16

error in these determinations.  *See* Fed. R. Civ. P. 72(b) advisory committee's note;

*Thomas v. Arn*, 474 U.S. 140, 150 (1985) (stating that "[i]t does not appear that

Congress intended to require district court review of a magistrate's factual or legal

conclusions, under a *de novo* or any other standard, when neither party objects to

those findings".).  Accordingly, the Magistrate Judge's Recommendation is adopted with

respect to these claims.

<h2 style="text-align:center">IV. CONCLUSION</h2>

For the reasons set forth above, the Court ORDERS as follows:

1.   Plaintiff's objections to the Magistrate Judge's April 7, 2011 Recommendation
     (ECF No. 137) are OVERRULED and the Recommendation is ADOPTED in its
     entirety;

2.   Claim One should proceed only as to the RLUIPA claim asserted against
     Defendant CDOC for injunctive or declaratory relief;

3.   Claim Two should proceed only as to the RLUIPA claim asserted against
     Defendant CDOC for injunctive and declaratory relief;

4.   Claim Three should proceed only as to the RLUIPA claim asserted against
     Defendant CDOC for injunctive and declaratory relief;

5.   Claim Four should proceed only as to the RLUIPA claim asserted against
     Defendant CDOC and as to the First Amendment free exercise claim asserted
     against Defendants CDOC and McCormick in her official capacity for injunctive
     and declaratory relief;

6.     Claim Five should proceed only as to the RLUIPA claim asserted against Defendant CDOC and as to the First Amendment retaliation claim asserted against Defendant CDOC and the John Doe Defendants in their official capacities for injunctive and declaratory relief;

7.     All other claims and forms of relief are hereby DISMISSED WITH PREJUDICE; and

8.     Defendants Jones, Hildebrand, Olivett, Brown, and DeCesaro are dismissed as Parties-Defendants to this action.

Dated this 19th day of January, 2012.

BY THE COURT:

William J. Martínez
United States District Judge

18