**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No.  09-cv-00537-WJM-KLM

JACOB IND,

     Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS;
MARY NELL MCCORMICK; and
UNKNOWN EMPLOYEES OF CSP AND CDOC,

     Defendants.

_____

**ORDER SUSTAINING PLAINTIFF'S OBJECTION, DECLINING TO ADOPT THE**
**JULY 16, 2012 RECOMMENDATION OF THE  UNITED STATES MAGISTRATE**
**JUDGE, AND DENYING DEFENDANTS' MOTION TO DISMISS ALL CLAIMS ON**
**MOOTNESS AND SOVEREIGN IMMUNITY GROUNDS**
_____

This matter is before the Court on the July 16, 2012 Recommendation by U.S.

Magistrate Judge Kristen L. Mix (ECF No. 161) (the "Recommendation") that

Defendants' Motion to Dismiss All Claims on Mootness and Sovereign Immunity

Grounds (ECF No. 151) (the "Motion") be granted.  The Recommendation is

incorporated herein by reference.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

## I.  BACKGROUND

The facts relevant to a resolution of the Defendants' Motion are detailed in the

Recommendation.  Briefly, Plaintiff is a *pro se* prisoner currently incarcerated at the

Limon Correctional Facility ("LCF") in Limon, Colorado.  (ECF No. 146.)  At the time of

the filing of the lawsuit, Plaintiff was incarcerated at the Colorado State Penitentiary

("CSP"), a maximum-security/administrative segregation facility that is classified as

"Level V," the highest security level within the Colorado Department of Corrections ("CDOC") system.  *See* Colo. Rev. Stat. § 17-1-104.3.  Defendants are various employees of the CDOC.  The instant lawsuit arises from Plaintiff's claims that CDOC policies unconstitutionally inhibit his ability to practice his religion, and that he has been unlawfully given a security classification because of his beliefs.[1]

Plaintiff's operative Complaint was filed on October 25, 2010.  (ECF No. 103.) Plaintiff's Complaint alleges violations of federal constitutional law and brings this action pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq.*  (*Id.*)  Defendants filed a Motion to Dismiss on November 17, 2010 (the third Motion to Dismiss filed in this matter). (ECF No. 112.)  Defendants' third Motion to Dismiss was granted in part and denied in on January 19, 2012.  (ECF No. 148).  The remaining claims are as follows:

> 1) Claim One regarding the ban on religious correspondence courses at CSP only as to the RLUIPA claim against Defendant CDOC for injunctive or declaratory relief;
>
> 2) Claim Two regarding the book limits imposed at CSP only as to the RLUIPA claim against Defendant CDOC for injunctive or declaratory relief;
>
> 3) Claim Three regarding the magazine limits imposed at CSP only as to the RLUIPA claim against Defendant CDOC for injunctive or declaratory relief;
>
> 4) Claim Four regarding the deprivation of the opportunity to take communion at CSP only as to the RLUIPA claim against Defendant CDOC for injunctive or

---

[1]     Plaintiff identifies himself as a follower of "Christian Separatism," a group within the larger religion known as "Christian Identity."  (ECF No. 103 at 3.)  This religion has been described as "rest[ing] upon White Supremacy principles, teaching that all other races and religions are inferior."  *Ind v. Wright*, 52 Fed. App'x 434, 436 (10th Cir. 2002); *see also Rooks v. Zavares*, No. Civ. 99-B-631, 2001 WL 34047959, at *1 (D. Colo. Jan. 24, 2001) (describing beliefs of Christian Identity followers).

declaratory relief, and as to the First Amendment free exercise claim asserted against Defendants CDOC and McCormick in her official capacity for injunctive and declaratory relief; and

5) Claim Five regarding the classification of Plaintiff as a member of a Security Threat Group ("STG") based upon his political and religious beliefs, which allegedly caused his placement at CSP, only as to the RLUIPA claim asserted against Defendant CDOC and as to the First Amendment retaliation claim asserted against Defendant CDOC and the John Doe Defendants in their official capacities for injunctive and declaratory relief.

(*Id.*)

Defendants' instant Motion to Dismiss (Defendants' fourth Motion to Dismiss), filed on January 20, 2012, requests that the Court dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction over the subject matter and sovereign immunity. (ECF No. 151.)  Specifically, Defendants argue that Plaintiff's claims are now moot because: "(1) Plaintiff is no longer in administrative segregation or housed in CSP; (2) these claims concern policies at CSP; and (3) no reasonable expectation exists that Plaintiff will be returned to administrative segregation or CSP."  (*Id.* at 5.)  Defendants additionally assert that sovereign immunity precludes Plaintiff's remaining claims because Congress did not abrogate sovereign immunity through the enactment of 42 U.S.C. § 1983, and because the CDOC is an arm of the state.  (*Id.* at 14-15.)  Plaintiff filed a Response to Defendants' Motion on February 15, 2012 (ECF No. 159), and Defendants filed a Reply in Support of their Motion on February 29, 2012 (ECF No. 160).

On the July 17, 2012, the Magistrate Judge issued her Recommendation that Defendants' Motion to Dismiss be granted because Plaintiff's claims are now moot due to his transfer to less restrictive prison conditions at LCF.  (ECF No. 161.)  Because the

Magistrate Judge recommended dismissal of Plaintiff's claims on the basis of mootness, the Recommendation did not reach Defendants' additional argument regarding sovereign immunity.  (*Id.* at 12.)  On August 8, 2012, Plaintiff timely filed an Objection to the Recommendation.  (ECF No. 165.)  Defendants did not respond to Plaintiff's Objection.

For the reasons stated below, Plaintiff's Objection to the Recommendation are sustained, the Court declines to adopt the July 16, 2012 Recommendation, and Defendants' Motion to Dismiss All Claims on Mootness and Sovereign Immunity Grounds is denied.

## II.  LEGAL STANDARD

When a Magistrate Judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the District Court Judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to."  Fed. R. Civ. P. 72(b)(3).  In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id*.

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and

-4-

may only exercise jurisdiction when specifically authorized to do so).  The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking."  *See Basso*, 495 F.2d at 909.

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however, the court may consider matters outside the pleadings without transforming the motion into one for summary judgment.  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)."  *Id.*

Further, in considering the Magistrate Judge's Recommendation in the instant case, the Court is also mindful of Plaintiff's *pro se* status, and accordingly, reads his pleadings and filings liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, such liberal construction is intended merely to overlook technical formatting errors and other defects in Plaintiff's use of legal terminology and proper English.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  *Pro se* status does not relieve Plaintiff of the duty to comply with various rules and procedures governing litigants and

counsel or the requirements of the substantive law and, in these regards, the Court will treat Plaintiff according to the same standard as counsel licensed to practice law before the bar of this Court. *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994).

## III.  ANALYSIS

The Magistrate Judge recommends that Defendants' Motion to Dismiss be granted because Plaintiff's claims are now moot due to his transfer to LCF.  (ECF No. 161.)  Plaintiff objects to the Recommendation in its entirety and argues that his claims fall under an exception to the mootness doctrine.  (ECF No. 165.)  As Plaintiff has objected to the entirety of the Recommendation, the Court will review the Recommendation *de novo*.  Fed. R. Civ. P. 72(b)(3).

**A.      Mootness**

Defendants argue that Plaintiff's requested equitable relief is moot because he is no longer subject to the complained-of restrictions imposed at CSP.  (ECF No. 151 at 5.)

This Court has no jurisdiction to consider moot cases, that is, cases in which "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (citation omitted).  Mootness is an issue of subject matter jurisdiction, which can be raised at any stage of the proceedings.  *See Kennedy v. Lubar*, 273 F.3d 1293, 1301-02 (10th Cir. 2001).  "It is a basic principle of Article III that a justiciable case or controversy must remain extant at all stages of review, not merely at the time the

complaint is filed." *Deberry v. Davis*, 460 F. App'x 796, 799 (10th Cir. 2012) (internal quotations and citation omitted).

Generally, a prisoner's transfer from a prison facility moots that prisoner's claim for injunctive relief against the transferring facility. *See McAlpine v. Thompson*, 187 F.3d 1213, 1216-18 (10th Cir. 1999) (mootness doctrine applies to prison conditions claim where there is no "reasonable expectation" that the plaintiff will return to the same prison and the same conditions of confinement); *Green v. Branson*, 108 F.3d 1296, 1299-1300 (10th Cir. 1997) (claims for injunctive and declaratory relief are moot where the prisoner has been released or transferred and is no longer subject to the conditions of confinement on which his claims are based). However, exceptions to the mootness doctrine exist if: "(1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit." *Riley v. INS*, 310 F.3d 1253, 1257 (10th Cir. 2002) (citations omitted).

The Court first turns to the voluntary cessation exception. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Binsz v. Cody*, 38 F.3d 1220, 1994 WL 577558, at *2 (10th Cir. Oct. 17, 1994) (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). "Instead, voluntary cessation moots a case if the defendant can satisfy the burden of demonstrating that "there is no reasonable expectation that the wrong will be repeated." *Id*. (citing *United States v.*

*W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).  "A claim is moot when no reasonable expectation exists that the alleged violation will recur and interim relief of events have eliminated the effects of the alleged violation."  *Id*. (citation omitted).  Further, the reasonable expectation standard "is not 'mathematically precise' and requires only a 'reasonable likelihood' of repetition."  *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citing *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)).

Plaintiff was previously transferred from CSP to the Colorado Correctional Facility ("CCF"), which is part of the same correctional facility complex, on December 3, 2009.  (Affidavit of Donald Brightwell ("Brightwell Aff."), ECF No. 151-2, ¶¶ 5-6.)) Despite Plaintiff's transfer to CCF, the Court previously found that Defendants did not meet their burden of demonstrating mootness because Plaintiff presented a reasonable likelihood that he would be reassigned to CSP, and the record did not present any assurance that he would not be reassigned to CSP.  (ECF No. 137 at 12-14.)

On June 27, 2011, Plaintiff was transferred from CCF to LCF.  (Brightwell Aff. ¶ 6.)  In light of Plaintiff's new transfer to the less restrictive LCF facility, the Magistrate Judge recommends that Plaintiff's claims are now moot.  (ECF No. 161 at 6-13.)  After careful consideration, the Court disagrees with the Magistrate Judge's Recommendation, and finds that, based upon the evidence before the Court, there remains a reasonable likelihood that Plaintiff will be returned to CSP.

The Magistrate Judge found that Defendants provided sufficient evidence "establishing that Plaintiff has not shown a reasonable expectation or demonstrated probability that he will be reassigned to CSP.  Defendants indicate that Plaintiff had been assigned to CSP only once during his seventeen years in CDOC custody."  (ECF

No. 161 at 6-7) (citing Brightwell Aff., ¶¶ 2-6.))

A review of the evidence, however, shows Defendants' assertion to be manifestly false.  Plaintiff was not assigned "only once" to CSP, but was actually assigned to CSP on two separate occasions for a total of approximately ten out of his more than 17 years in prison.  (Prisoner Movement Sheet (ECF No. 112-6.))[2]  Additionally, Plaintiff was incarcerated at CCF for approximately two and half years.  (*Id.*)[3]  All told, Plaintiff was incarcerated at CSP/CCF for more than eleven years, or approximately two-thirds of the entire time he has been incarcerated.  (*Id.*)

It is easy see why the Magistrate Judge came to believe that Plaintiff had been assigned to CSP only once during his seventeen years in CDOC custody.  Defendants attached the affidavit of Donald Brightwell to their Motion.   (ECF No. 151-2.)  Mr. Brightwell is employed by the CDOC as the Case Management Supervisor at LCF.  (*Id.*, 1.)  In his affidavit, Mr. Brightwell states that Plaintiff "was incarcerated at CCF from December 3, 2009, through June 27, 2011." (*Id.*, ¶ 5.)  Further, the Brightwell affidavit states that:

> [Plaintiff] was incarcerated at CSP from September 17, 2007, through December 3, 2009, because he had demonstrated behavior that was too violent or dangerous to be placed safely in general population.  On December 3, 2009, after demonstrating improved behavior, Ind was transferred to CCF.  Ind's continued improved behavior resulted in his transfer to LCF, his current facility, on June 27, 2011."

(*Id.*, ¶ 6.)

---

[2]      Plaintiff was assigned to CSP from September 15, 1995 to April 17, 2003, and then again from September 17, 2007 until December 3, 2009.  (*Id.*)

[3]      Plaintiff was assigned to CCF from November 9, 1994 to September 15, 1995, and again from December 3, 2009 until June 27, 2011.  (Id.)

Significantly, however, the Brightwell affidavit completely fails to also state that Plaintiff was incarcerated at CSP from September 15, 1995 to April 17, 2003, and at CCF from November 9, 1994 to September 15, 1995.

In his Response to Defendants' Motion, Plaintiff states that he "has been to CSP/Admin. Seg. twice and has spent almost 1/3 of his life in CSP/CCF (about 11 years and 8 months of his 34 years of age)." (ECF No. 159 at 2.) In their Reply Brief, Defendants simply respond to this fact by stating "[t]he fact that Plaintiff had been *re-assigned* to Colorado State Penitentiary (CSP) on one occasion during his seventeen years and counting in CDOC's custody merely creates a theoretical possibility that he will be re-assigned to CSP in the future; . . ." (ECF No. 160 at 2) (emphasis added).[4]

Defendants appear to have misled the Court into believing that Plaintiff was only incarcerated at CSP/CCF on one occasion, for approximately 19 months, during his seventeen years in CDOC custody. The Court is without a basis to conclude whether Defendants' carefully-chosen language was intended to cause the Court to misapprehend the true extent of the duration of Plaintiff's incarceration at CSP/CCF. It is, however, curious that Defendants chose not to file a Response to Plaintiff's Objection, in which he clearly points out the actual length of time he has been housed at CSP/CCF. Indeed, it is obvious that Defendants' questionable characterization of

---

[4]     Plaintiff also reiterates in his Objection that he has "been to CSP twice during his incarceration and has spent over half of his incarceration at the CSP/CCF complex. Of the 19 1/2 years he has spent incarcerated, the Plaintiff has been in the CSP/CCF complex for at least 11 years." (ECF No. 165 at 2.) Defendants do not respond to Plaintiff's Objection.

this matter caused the Magistrate Judge to conclude that Plaintiff had been incarcerated at the CSP/CCF complex for only about 19 months. (ECF 161 at 6-7.)  As a consequence, the Court finds the Brightwell affidavit to be misleading, and will not credit its claim that "Plaintiff's good behavior renders improbable his return to administrative segregation and placement at CSP."[5] (Brightwell Aff., ¶¶ 6-8); see *Berg v. Blatt, Hasenmiller, Leibsker & Moore LLC*, No. 07-cv-4887, 2009 WL 901011, at *6-7 (N.D. Ill. Mar. 31, 2009) (an "affidavit's inaccurate recitation of the debts and interest owed will not in themselves carry the day for [the plaintiff]").

In short, Plaintiff is a member of a Security Threat Group who is, by his own admission, actively recruiting members to his group.[6]  (ECF No. 159 at 2-4.)  He has spent the majority of his time in incarceration at CSP/CCF, at least in part, because he is a member of such a group.  (*Id*.)  Under these facts, and the credited evidence, the

---

[5]     The Magistrate Judge also noted that Plaintiff's recent initiation of a new action against CDOC and prison officials at LCF, *see* Case No. 12-cv-00997-WJM-KLM, "indicates to the Court that Plaintiff has shifted his attention from the conditions at CSP, to which he is no longer subjected, to the conditions under which he is presently confined at LCF."  (ECF No.161 at 7.)  However, Plaintiff has continued to file briefs and an Objection in this matter after he initiated his new action.  Therefore, there is no evidence to indicate to the Court that Plaintiff has turned his attention away from this case or is incapable of litigating two cases at the same time.

[6]     Under Colorado Department of Corrections regulations, C.R.S.A. § 17-1-109(2)(a):

The warden of each correctional facility should, wherever possible, take such measures as are reasonably necessary to restrict the confinement of any person who actively participates in disruptive security-threat group behavior, as defined in paragraph (b) of this subsection (2), so as to prevent contact with other inmates at such facility. The warden should, wherever possible, also take such measures as are reasonably necessary to prevent recruitment of new security-threat group members from among the general inmate population. Association with an inmate gang or security-threat group alone shall not be sufficient to meet the requirements of this paragraph (a).

-11-

Court finds that there is a reasonable likelihood that Plaintiff will be returned to CSP at some point in the future."[7]  See *Binsz,* 1994 WL 577558, at *3.

## B.     Sovereign Immunity

Defendants also argue that Plaintiff's claims must be dismissed on sovereign immunity grounds.  (ECF No. 151 at 14-15.)  Because the Magistrate Judge recommended dismissal of Plaintiff's claims on the basis of mootness, the Recommendation did not reach Defendants' sovereign immunity argument.  Thus, the Court addresses Defendants' sovereign immunity argument in the first instance.

"It is well established that under the Eleventh Amendment, sovereign immunity prohibits federal courts from entertaining suits against states brought by their own citizens or citizens of another state without their consent."  *Hunt v. Colo. Dep't of Corrs.*, 271 F. App'x 778, 780 (10th Cir. 2008) (citing *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)).  Sovereign immunity extends to state agencies that function as arms of the state, such as the CDOC.  *Id.* (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).  However, the Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of his or her federal civil rights. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908).  This exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a

---

[7]     Because the Court finds that Plaintiff's claims are not moot due to the voluntary cessation exception, the Court does not reach the question of whether the "capable of repetition, yet evading review" exception also applies to the facts of this case..

means for seeking money damages. *Buchwald v. University of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998).

Defendants assert that the Eleventh Amendment exception described above does not apply to Plaintiff's claims because he is only seeking a declaration concerning a past constitutional violation.  (ECF No. 151 at 14-15.)  The Court disagrees.

The Court previously denied Defendants' Eleventh Amendment arguments because "Plaintiff may maintain an action against the individual Defendants in their official capacities to the extent he seeks prospective injunctive relief."  (ECF No. 95 at 8-9.)  As described above, there is a reasonable likelihood that Plaintiff will be returned to CSP and face allegedly unlawful restrictive conditions at some point in the future. Therefore, the Court finds that Plaintiff is still seeking prospective injunctive relief, and an exception to Eleventh Amendment sovereign immunity still applies here.

For the above reasons, Defendants' Motion to Dismiss All Claims on Mootness and Sovereign Immunity Grounds is denied.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    Plaintiff's Objection (ECF No. 165) to the Magistrate Judge's July 6, 2012 Recommendation is SUSTAINED;

2.    The Court DECLINES TO ADOPT the Recommendation (ECF No. 161); and

3.    Defendants' Motion to Dismiss All Claims on Mootness and Sovereign Immunity Grounds (ECF No. 151) is DENIED.

Dated this 13th day of September, 2012.

BY THE COURT:

William J. Martinez
United States District Judge