IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00537-WJM-KLM

JACOB IND,

    Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,
MARY NELL MCCORMICK, and
UNKNOWN EMPLOYEES OF CSP AND CDOC,

    Defendants.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on **Plaintiff's oral Motion to Compel** production by Defendant Colorado Department of Corrections ("CDOC") of certain documents pertaining to Plaintiff, who is currently incarcerated at the Limon Correctional Facility in Limon, Colorado (the "Motion"). At the time of filing of this lawsuit, Plaintiff was incarcerated at Colorado State Penitentiary ("CSP"). Plaintiff seeks production of documents relating to review of the CSP Classification Committee's recommendation of Plaintiff "for progressive movement from CSP" in 1997 (the "CSP Movement Review Documents"), and an unredacted version of a document summarizing Plaintiff's alleged gang affiliations, which is titled "Query Gang Records" and identified by CDOC as a "QTGANG query" (the "QTGANG Query"). Defendant opposes both requests. The Court has reviewed **Defendant's Response to Motion to Compel** [Docket No. 215; filed July 8, 2013]

("Defendant's Response"), **Plaintiff's Reply in Support of Oral Motion to Compel** [Docket No. 225; filed July 19, 2013] ("Plaintiff's Reply"), and the disputed documents *in camera* and is fully advised in the premises. For the reasons set forth below, the Motion is **DENIED**.

## I. Background

Plaintiff identifies himself as a "Christian Separatist."[1] He asserts that CDOC's policies during his incarceration at CSP between September 7, 2007 and December 3, 2009, which banned certain correspondence courses, limited the number of books and magazines an inmate can possess, and allowed prison officials to identify him as a member of a security threat group, violated his First Amendment right to practice his religion and his rights pursuant to the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1 et seq. ("RLUIPA"). Defendant CDOC asserts that its policies do not and did not substantially burden Plaintiff's religious exercise, and that they further a compelling government interest. CDOC further denies that Plaintiff was identified as a security threat group member or placed in administrative segregation because of, or in retaliation for, his religious beliefs. [# 204] at 3-4.

## II. Analysis

### A.    The CSP Movement Review Documents

Defendant objects to production of the Movement Review Documents on the grounds of relevance. As indicated above, Plaintiff's claims relate to his incarceration at

---

[1] Christian Separatists have been described as "a religious group that allows only Caucasians to be members and which believes that Caucasians are uniquely blessed by God and must separate themselves from all non-Caucasians." *Murphy v. Missouri Dept. of Corr.,* 506 F.3d 1111, 1114 (8th Cir. 2007).

CSP between September 17, 2007 and December 3, 2009. [#204] at 3. Defendant asserts that documents relating to review of the Classification Committee's recommendation of Plaintiff "for progressive movement" in 1997 are not relevant to any party's claim or defense and are not reasonably calculated to lead to the discovery of admissible evidence.

The Court has reviewed the CSP Movement Review Documents *in camera.* The documents are dated between June 26, 1997 and August 12, 1997. They contain no reference to Plaintiff's religion whatsoever, and explain the reasons for denial of the Committee's recommendation "for progressive movement [of Mr. Ind] from CSP" in terms of his disciplinary and gang history and behavior with prison staff. Plaintiff's claims make no reference to his incarceration at CSP in 1997 or any policies followed by the prison then. Moreover, on their face, the CSP Movement Review Documents lack any relationship to Mr. Ind's religion, CSP's policies regarding practice of Mr. Ind's religion, or any other matter that could reasonably lead to the discovery of admissible evidence in this case. Accordingly, they are not relevant here. Fed. R. Civ. P. 26(b)(1); *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 359 (D. Colo. 2004). The Motion is therefore **denied** regarding the CSP Movement Review Documents.

**B.    The QTGANG Query**

As indicated above, Defendant CDOC produced a redacted version of the QTGANG Query during the course of discovery in this case and designated it as confidential and for attorneys' eyes only pursuant to the Protective Order [#193]. CDOC contends that the document "contains confidential, security-sensitive information and is subject to the official information privilege." CDOC further contends that Plaintiff has failed to demonstrate a

need for the unredacted document that outweighs the government's need to protect the information. *Defendant's Response* [#215] at 2.

Plaintiff contends that Defendant uses the QTGANG Query to identify him as a member of a Security Threat Group ("STG"). He further alleges that "Defendants have found a creative way to use [his] religious beliefs to identify him as a member of" an STG. In support of his request for an unredacted version, he cites his "critical need" for the unredacted document and available security restrictions, claiming that his "interest in production outweighs Defendants' interests in withholding it." *Plaintiff's Reply* [#225] at 1-2.

### 1. The Nature of the Document in Dispute

According to Tino C. Herrera, a Criminal Investigator II employed by CDOC, a QTGANG Query is a document which reflects information gathered about an offender as well as the calculation made by CDOC from that information for the purpose of identifying him as "security threat group affiliated." *Defendant's Response* at Exh. B, ¶ 14. Mr. Herrera explains that page 1 of the document "includes the offender's STG status, date of confirmation, raw intelligence notes, and other summary information. Page 2 shows the objective point-based instrument utilized to identify an offender as security threat group affiliated. . . . Pages 3 through 8 include the data used to complete the instrument." *Id.*

Mr. Herrara states that a QTGANG Query is "among the most sensitive records in the department" because it discloses "intelligence and the methodology and strategies used to gather intelligence." *Id.* at ¶ 12. Mr. Herrera opines that if such information "fell into the wrong hands, [it would] help offenders avoid detection, paving the way for them to fly under the proverbial radar and perpetuate actions that disrupt facility operations, including criminal and violent offenses." *Id.*

Comparison of the redacted version of the QTGANG Query to the unredacted version reveals that the redacted information is limited to the "raw intelligence notes" referenced by Mr. Herrera, the numbers used in CDOC's point system to classify offenders as members of STGs, and Mr. Ind's total point score. None of the redacted information makes any reference to Mr. Ind's religion. It is important to note the information available to Plaintiff's counsel on the redacted version of the document which has been produced. The redacted version discloses the identity of Mr. Ind's "gang" and "monikers," describes his self-identification as a member of the "Christian Identity" religion, his possession of drawings of lightning bolts and swastikas, his written admission of being a "Nazi," his written admissions of being a "White Supremacist," his possession of "STG materials while incarcerated including drawings, letters, and weapons," and, most importantly, reveals the criteria used to evaluate his STG status, without revealing his overall point score. Accordingly, Plaintiff's counsel has at her disposal all information in the QTGANG Query except the intelligence notes, the numerals assigned to the point system, and Mr. Ind's total score under the point system.

## 2. The Official Information Privilege

When federal law governs the rule of decision, federal common law governs the existence of a privilege. *See Cutting v. United States*, No. 07-cv-02053-REB-MEH, 2008 WL 1775278, at *2 (D. Colo. Apr. 14, 2008). This case was brought pursuant to the First Amendment of the United States Constitution and RLUIPA, a federal statute. Therefore, federal common law governs whether the QTGANG Query is privileged. *See, e.g., Everitt v. Brezzel*, 750 F. Supp. 1063, 1066 (D. Colo. 1990); *Hutton v. City of Martinez*, 219 F.R.D. 164, 167 (N.D. Cal. 2003); *Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992).

The official information privilege has been described as "the government's privilege to prevent the disclosure of information whose disclosure would be contrary to the public interest." *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 342 (E.D. Pa. 1973). The privilege extends to security considerations applicable to correctional facilities. *Whitington v. Sokol*, No. 06-cv-01245-EWN-CBS, 2008 WL 435277, at *1-2 (D. Colo. Feb. 14, 2008). The federal courts have long recognized the important goal of protecting prison security, as well as a broad policy against Court interference in matters which affect those concerns. *See, e.g., Thornburg v. Abbott*, 490 U.S. 401, 415, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); *Fourhorn v. City & County of Denver*, 261 F.R.D. 564, 569 (D. Colo. 2009). Hence application of the privilege to documents which impact prison security is proper.

However, the official information privilege is not absolute. The Court must weigh "the interests of the party seeking discovery . . . against the interests of the government entity asserting the privilege." *Ulibarri v. City & Cnty. of Denver*, 07-cv-01814-WDM-MJW, 2009 WL 260945, at *3 (D. Colo. Feb. 4, 2009) (citing *Whitington*, 2008 WL 435277, at *1). Plaintiff contends that he needs the QTGANG Query because "none of the information Defendants have redacted from [it] is available to [his] attorneys through . . . other discovery." *Plaintiff's Reply* [#225] at 3. He also contends that Defendant CDOC may not withhold the information on the basis that it is not relevant, as CDOC is not entitled to make that determination. *Id.* at 3-4.

CDOC asserts, as recounted by Mr. Herrera in his affidavit, that "the information contained in the unredacted QTGANG Query is equivalent to a customized 'how to' lesson plan on the specific measures an offender should take to subvert security threat group-detection methods, and, irrespective of a protective order, increased distribution and

dissemination of this information increases the likelihood that the information will be compromised and misappropriated." *Defendant's Response* [#215] at 6.

In weighing Plaintiff's interests in obtaining the limited information from the QTGANG Query that has been withheld against the Department of Corrections' interest in withholding it, the Court's concludes that CDOC's interest is stronger. Although Plaintiff may not be able to obtain the precise information withheld from other discovery, the purpose of his request for production of the QTGANG Query is to discern the reasons for his STG classification, and the information disclosed in the redacted document makes those reasons clear. Moreover, although Plaintiff professes to have an interest in the withheld information because he wants to prevent CDOC from making arbitrary decisions about the relevance of information sought, this argument is disingenuous. Plaintiff took all necessary steps to ensure that CDOC would not be permitted to make a unilateral relevance determination by filing the Motion. Adjudication of the Motion allowed Plaintiff ample opportunity to make all arguments regarding relevance of the document and to obtain an independent adjudication from the Court.

In contrast to Plaintiff's interests in obtaining the document, CDOC's interest in withholding it is strong, well-recognized and powerful. Prison discipline and safety necessarily depend in part on identification of inmates' affiliations with each other and with organized groups. Disclosure of the information sought here would compromise the process by which CDOC obtains that information and its future use. The Colorado Department of Correction's interest in protecting that process – now and in the future – is not outweighed by Mr. Ind's interests here.

### III. Conclusion

For the reasons set forth above, Plaintiff's oral Motion to Compel Production of Documents is **denied.**

Dated: August 30, 2013

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge