**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No.  09-cv-00537-WJM-KLM

JACOB IND,

      Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS;
MARY NELL MCCORMICK; and
UNKNOWN EMPLOYEES OF CSP AND CDOC,

      Defendants.

---

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

      Plaintiff Jacob Ind ("Plaintiff") is a prisoner currently incarcerated at the Limon

Correctional Facility ("LCF") in Limon, Colorado.  (ECF No. 146.)  At the time of the

filing of the lawsuit, Plaintiff was incarcerated at the Colorado State Penitentiary

("CSP"), a maximum-security/administrative segregation facility that is classified as

"Level V," the highest security level within the Colorado Department of Corrections

("CDOC") system.  *See* Colo. Rev. Stat. § 17-1-104.3.  The instant lawsuit arises from

Plaintiff's claims that CDOC policies unlawfully inhibit his ability to practice his religion,

and that he has been given a security classification because of his religious beliefs.

      Before the Court is Defendants' Motion for Summary Judgment ("Motion").  (ECF

No. 198.)  For the reasons set forth below, the Motion is denied.

## I.  LEGAL STANDARD

      Summary judgment is appropriate only if there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  FACTUAL BACKGROUND

Plaintiff was assigned at CSP from September 15, 1995 to April 17, 2003, and again from September 17, 2007 until December 3, 2009.  (ECF No. 112-6.)  He is a devout follower of the Christian Separatist faith, which falls within the larger religion known as Christian Identity.  (ECF No. 103 at 4.)  Plaintiff has associated himself with the Christian Identity religion for more than eighteen years and has donated over $1500 to its causes.  (Pl.'s Aff. (ECF No. 234-1) ¶ 3.)

A fundamental aspect of the Christian Separatist faith is a belief in the superiority of the white race, and the religion encompasses white separatist views.  (*Id*. ¶¶ 6-7.)

The faith does not, however, condone violence, hatred, or any other negative behavior towards members of non-white races.  (*Id*. ¶¶ 8-9.)  Another key aspect of the Christian Separatist faith is intensive study of the Bible, the laws of creation, and how to apply Biblical and Natural laws to daily life.  (*Id*. ¶ 15.)

Administrative segregation at CSP is designed to be a progressive management process which is at least nine months long.  (ECF No. 198-4.)  Offenders in administrative segregation are assigned to one of the following levels: I, II, III, IV A, or IV B.  (*Id*.)  Prisoners in administrative segregation are not permitted to participate in correspondence courses.  (ECF No. 198-9.)  CDOC permits prisoners in administrative segregation at CSP to keep personal books and magazines in their cells, subject to the following limits:

- Level I — one book and zero magazines

- Levels II & III — two books and two magazines

- Levels IV A & IV B — five books and six magazines

(ECF No. 198-7.)  A prisoner may exchange books and magazines on a one-for-one basis daily.[1]  (*Id*.)  CDOC has no written justification for the ban on prisoners in administrative segregation participating in correspondence courses or for the limits on the number of books and magazines.  (ECF Nos. 234-7, 234-8.)

CDOC has policies and procedures for classifying inmates according to whether they are affiliated with a security threat group ("STG"), which is defined as "a group of

---

[1]  At the time Plaintiff was in administrative segregation at CSP, inmates were only permitted to exchange books once a year.  (ECF No. 103 at 5.)  However, CDOC has since revised the policy.  (ECF No. 198-7.)

three or more individuals acting in concert or individually in activity that is characterized by criminal conduct or conduct that violates the department's code of penal discipline for the purpose of disrupting prison operations, recruiting new members, damaging property or inflicting or threatening to inflict harm to employees, contract workers, volunteers or other state inmates." (ECF No. 199.) An inmate's STG classification is used to help decide where a prisoner will be housed. (Herrera Dep. (ECF No. 234-4) p. 25.) CDOC also considers an inmate's STG classification in deciding whether to send a prisoner to administrative segregation, and whether to release him from administrative segregation. (ECF Nos. 198-3; 234-11.)

White supremacists are considered an STG. (Herrera Dep. at 19.) CDOC used to consider the Christian Identity religion to be a subgroup of the White Supremacists STG. (*Id*. at 45.) However, CDOC's policies changed in March 2013 and Christian Identity is now considered a religion and not an STG subgroup. (ECF No. 198-15.) Despite this policy change, many inmates who practice the Christian Identity religion remain classified as members of an STG. (*Id*.; Winden Dep. (ECF No. 198-17) pp. 17-18.) Plaintiff is identified as a member of an STG. (Herrera Dep. at 17.)

### III.  ANALYSIS

Plaintiff brings this action pursuant to the Religious Land Use Practices and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*.  In relevant part, RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

To prevail on a RLUIPA claim, a plaintiff must show that he "wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010).  If a prisoner can meet these requirements, the burden then shifts to the state to show that the substantial burden on religious exercise "results from a 'compelling governmental interest' and that the government has employed the 'least restrictive means' of accomplishing its interest." *Id*. at 1318 (quoting 42 U.S.C. § 2000cc-1(a)).

Plaintiff brings three claims that challenge Defendants' restrictions on prisoners in administrative segregation:  Count One challenges the restriction on correspondence courses, Count Two involves the book restrictions, and Count Three challenges the magazine restrictions.  (ECF No. 103.)  In Count Five, Plaintiff brings a RLUIPA claim challenging Defendants' method of classifying offenders in an STG.  (*Id*.)  The Court will address each of these claims in turn below.

## A.    Restrictions on Correspondence Courses, Books, and Magazines

Plaintiff alleges that the book and magazine restrictions on prisoners in administrative segregation at CSP violate RLUIPA in that they substantially burden his ability to study his religion.  (ECF No. 234 at 34-35.)  Plaintiff also alleges that his

inability to participate in correspondence courses while in administrative segregation interfered with his studies.  (*Id*. at 29-30.)

With regard to Plaintiff's sincerely held religious beliefs, Plaintiff's sworn statement provides that "[t]he importance of study to the Christian Separatism cannot be overemphasized" and "[t]o properly practice Christian Separatism, one needs access to many reference materials (*i.e.* books and magazines) at the same time, including Greek and Hebrew texts and language aids, Bible dictionaries, Bible atlases, lexicons, commentaries and translations, history materials, political/philosophical teachings, scientific studies, and works on religious teachings."  (Pl.'s Aff. ¶¶ 13, 16.)

Defendants contend that "the record demonstrates that the King James version of the Bible is the fundamental foundation of the Christian Identity faith, along with the research aids of *Strong's Exhaustive Concordance* and *Young's Analytical Concordance* for the Hebrew, Greek and Aramaic word definitions."  (ECF No. 237 at 10.)  This suggests that Defendants are challenging whether the need for access to multiple books at a time is central to Plaintiff's Christian Identity faith.  However, "RLUIPA bars inquiry into whether the belief or practice is 'central' to a prisoner's religion."  *Abdulhaseeb*, 600 F.3d at 1314 n.6; *see also Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005) ("RLUIPA defines 'religious exercise' to include 'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'") (quoting 42 U.S.C. § 2000cc-5(7)(A)).  Instead, the Court must consider only the Plaintiff's own sincerely held religious beliefs.[2]  *Id*. at 1314 (citing *Mosier v. Maynard*,

_____

[2]  This is a significant departure from the law governing First Amendment Free Exercise claims, in which the Court can "consider whether the litigants' beliefs find any support in the

937 F.2d 1521, 1523 (10th Cir. 1991) ("Intrafaith differences are common and cannot be resolved by secular courts.").  On the record before the Court, a reasonable person could find that Plaintiff sincerely believes that he needs access to multiple texts at once in order to sufficiently study his religion.

Plaintiff also states that he "needs access to religious correspondence courses that provide invaluable and necessary feedback and guidance, which I cannot receive from study alone, regarding whether I properly understand and follow my religion." (Pl.'s Aff. ¶ 17.)  In response, Defendants contend that correspondence courses are not essential for Plaintiff's religion because Plaintiff can engage in guided, self-study by writing letters to church elders.  (ECF No. 198 at 16-17.)  However, this argument again asks the Court to delve into which aspects of Plaintiff's religious practice are central to his faith, which is prohibited under RLUIPA.  *Abdulhaseeb*, 600 F.3d at 1314 n.6.  This is something this Court will not do.

There is no evidence rebutting Plaintiff's affidavit stating that he sincerely believes that his religion requires him to study multiple texts at one time, or that he needs access to religious correspondence courses to ensure that he is properly studying his religion.  As such, the Court finds that he has met his burden of showing that these are sincerely held religious beliefs.

The inquiry then becomes whether the book, magazine, and correspondence

---

religion to which they subscribe, or whether the litigants are merely relying a self-serving view of religious practice."  *See Levitan v. Ashcroft*, 281 F.3d 1313, 1321 (D.C. Cir. 2002).  The basis for this departure is RLUIPA's broad definition of what constitutes a "religious exercise".  *See Van Wyhe v. Reisch*, 591 F.3d 639, 656 (8th Cir. 2009) (altering the definition of "substantial burden" for the RLUIPA context based on RLUIPA's statutory definitions).

course restrictions "substantially burden" these sincerely held beliefs.  In this circuit, "a religious exercise is substantially burdened under 42 U.S.C. § 2000cc–1(a) when a government (1) requires participation in an activity prohibited by a sincerely held religious belief, or (2) prevents participation in conduct motivated by a sincerely held religious belief, or (3) places substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief." *Abdulhaseeb*, 600 F.3d at 1315.  "'The practice burdened need not be central to the adherent's belief system, but the adherent must have an honest belief that the practice is important to his free exercise of religion.'"  *Id*. at 1316 (quoting *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 332 (5th Cir. 2009)).

Defendants argue that, at most, these restrictions are a "mere inconvenience" to Plaintiff's religious practice, and that an inconvenience is not sufficient to constitute a "substantial burden."  (ECF No. 198 at 19.)  However, Plaintiff has presented evidence which plainly states that intensive study is central to his practice of Christian Separatism, and that such study requires access to multiple books and correspondence courses.  (Pl.'s Aff. ¶¶ 12-17.)  From this evidence, the Court finds that a reasonable person could conclude that these restrictions either prevent Plaintiff from engaging in conduct motivated by a sincerely held religious belief or, at least, that they place substantial pressure on Plaintiff to discontinue his religious studies.  As such, Plaintiff has met his *prima facie* burden.  *See Abdulhaseeb*, 600 F.3d at 1315.

Because Plaintiff has met his burden of showing that the restrictions on books, magazines, and correspondence courses substantially burden his sincerely held

religious beliefs, the burden shifts to Defendants to show that the restrictions are the least restrictive means of achieving a compelling state interest. *Id*. at 1318. Defendants contend that these restrictions are intended to maintain prison safety, in that weapons can be hidden in books and magazines and it is easier to search a cell that contains fewer materials. (ECF No. 198 at 16.) Defendants also contend that progressive nature of the book and magazine restrictions encourage behavior modification in the inmates. (*Id*.)

The Court has little difficulty concluding that maintaining prison safety and encouraging better behavior in prisoners are both compelling state interests. *See Cutter*, 544 U.S. at 725 ("[P]rison security is a compelling state interest[.]"); *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003) (recognizing that the withdrawal of privileges is a "proper and even necessary management technique to induce compliance with the rules of inmate behavior"). However, to meet their summary judgment burden, Defendants must also show that these restrictions are the least restrictive means of serving these compelling interests. In their motion papers, Defendants aver that these restrictions are the least restrictive means, but they offer no evidentiary support for this conclusion. (*See* ECF No. 198 at 18-21.) Notably, Defendants' Reply Brief argues only that the restrictions serve a compelling state interest; there is no discussion of the requirement that they be the least restrictive means. (ECF No. 237 at 8-11.)

While the Court must give prison officials wide latitude to devise effective security measures, they "must do more than offer conclusory statements and *post hoc* rationalizations for their conduct." *Murphy v. Mo. Dep't of Corrs.*, 372 F.3d 979, 988-89

(8th Cir. 2004). "A prison 'cannot meet its burden to prove least restrictive means unless it demonstrates that it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice.'" *Spratt v. R.I. Dep't of Corrs.*, 482 F.3d 33, 41 (1st Cir. 2007) (quoting *Warsoldier v. Woodford*, 418 F.3d 989, 999 (9th Cir. 2005)).

In this case, there is no evidence that Defendants considered any alternatives to the restrictions on books, magazines, and correspondence courses for prisoners in administrative segregation.[3]  Moreover, Defendants admit that it is easier to search a book with fewer pages than a book with more pages.  (ECF No. 234 at 16; ECF No. 237 at 4.)  Yet there is no restriction on the size or length of a book or magazine; the policy relates only to the number of books and magazines.  Thus, a reasonable person could conclude that the book and magazine restrictions are arbitrary and not the least restrictive means of maintaining prison security and encouraging better behavior.  *See Washington v. Klem*, 497 F.3d 272, 284 (3d Cir. 2007) (finding a dispute of fact as to whether policy which only specified the number of books a prisoner could possess furthered compelling interest of prison safety and was the least restrictive means).

Given the dearth of evidence supporting Defendants' contention that the challenged policies are the least restrictive means of meeting CDOC's compelling state interests, the Court finds that Defendants have failed to meet their summary judgment

---

[3]  Defendants rely on *Warner v. Patterson*, 2011 WL 5117917 (D. Utah Oct. 27, 2011), in support of their argument that the challenged restrictions are the least restrictive means of satisfying their interests.  However, in *Warner*, the prison officials had considered and ruled out other alternatives before deciding on the challenged policy.  *Id.* at * 11.  The reasoned process used to arrive at the challenged policies was part of the basis for the court's finding that those policies were the least restrictive means.

burden.  *See Murphy*, 372 F.3d at 989 (reversing district court's grant of summary judgment and finding a dispute of fact as to whether policy was least restrictive means when there was no evidence that the prison had considered other alternatives); *Benning v. Georgia*, 964 F. Supp. 2d 1358, 1369 (M.D. Ga. 2012) (denying summary judgment when prison officials failed to show that they considered any other alternatives).

Accordingly, Defendants' Motion for Summary Judgment is denied as to Counts One, Two and Three of Plaintiff's Amended Complaint.

## B.    Classification in a Security Threat Group

Plaintiff challenges Defendants' policies governing how offenders are classified as members of an STG.  (ECF No. 103.)  Specifically, Plaintiff contends that he lives in fear of being returned to administrative segregation because Defendants designate all members of the Christian Identity religion as members of an STG.  (*Id*.)

It is undisputed that a key tenet of Plaintiff's Christian Separatist religion is the belief that "the white race is superior to other races."  (Pl.'s Aff. ¶ 6.)  Thus, Plaintiff has met his burden of showing that the superiority of the white race is a sincerely held religious belief.

Defendants contend that Plaintiff cannot show that his belief in the superiority of the white race is substantially burdened by CDOC's STG classification policy because the current version of such policy does not consider religion at all.[4]  (ECF No. 198 at

---

[4]  It is undisputed that, prior to March 8, 2013, CDOC identified Christian Identity as a subgroup within a security threat group.  (ECF No. 198 at 12.)  However, CDOC changed its policy and being a member of the Christian Identity religion is no longer sufficient to be declared a member of an STG.  (Herrera Dep. at 31-32.)  Because this case involves only injunctive

21.)  The Court acknowledges that the current policy, on its face, does not consider a prisoner's religious affiliation.  (*See* ECF No. 199.)  However, the Court finds that there is a dispute of fact as to why Plaintiff is classified as a member of an STG.  Defendants contend that Plaintiff is identified as a member of an STG because "he is a self-declared white supremacist and Nazi and was found in possession of material containing symbols associated with neo-Nazis and white supremacy."  (ECF No. 198 at 21.)  In support of this contention, Defendants cite a document in which notations are made that Plaintiff admitted being a "NAZI" and a "White Supremacist" in writing.  (ECF No. 200.)  This could certainly lead a reasonable person to conclude that Plaintiff is classified as a member of an STG based on his affiliation with a gang or hate group rather than his religion.

However, Plaintiff's Affidavit states that "[is] not and [has] never been a member of any gang or hate group."  (Pl.'s Aff. ¶ 10.)  It also states that he has "never proclaimed to be a member of any gang or hate group."  (*Id*. ¶ 11.)  While the Court acknowledges that a plaintiff cannot create a sham dispute of fact to escape summary judgment, the record here is not adequate to allow the Court to draw such a conclusion. Instead, the Court must view the facts in the light most favorable to the Plaintiff and, therefore, for purposes of the instant Motion, must find that Plaintiff is not currently and has not ever been a member of a gang or hate group.  Because it is undisputed that Plaintiff is currently classified as a member of an STG, a reasonable person could find that such classification results from his religion.

---

relief, and the Court cannot enjoin a policy that no longer exists, the Court must consider only CDOC's current policies.  *See Banas v. Dempsey*, 742 F.2d 277, 279 (6th Cir. 1984).

Defendants also contend that Plaintiff cannot show that being classified as a member of an STG substantially burdens his religion because there are no negative consequences to the classification. (ECF No. 198 at 22.) However, the record shows that a prisoner's STG status is a factor that is considered in initiating placement in administrative segregation. (ECF No. 234-11.) It is also a factor that is considered when determining whether a prisoner in administrative segregation should be retained. (ECF No. 198-3 at 3.) Therefore, a reasonable person could conclude that there are real and serious consequences when a prisoner is classified as a member of an STG and that these consequences place "substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief." *Abdulhaseeb*, 600 F.3d at 1315.

In support of the Motion, Defendants argue only that Plaintiff cannot meet his burden under RLUIPA to show that the current policies governing STG classification substantially burden his religious exercise. (ECF No. 198.) Defendants make no attempt to meet their burden of showing that such policies are the least restrictive means of achieving a compelling state interest. (*Id*.) Because the Court finds that a reasonable person could conclude that Plaintiff is classified as a member of an STG based on his religious beliefs, and that such classification substantially burdens his religious exercise, summary judgment is not appropriate on this claim.

Accordingly, Defendants' Motion for Summary Judgment is denied as to Count Five of Plaintiff's Amended Complaint.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.      Defendants' Motion for Summary Judgment (ECF No. 198) is DENIED;

2.      This case remains set for a four-day bench trial beginning on January 6, 2014, with a Final Trial Preparation Conference on December 20, 2013.

3.      As this case is the oldest on the undersigned's docket, no extensions of any remaining deadlines will be granted absent a showing of substantial good cause arising out of truly compelling circumstances.

Dated this 10th day of October, 2013.

BY THE COURT:

William J. Martinez
United States District Judge

-14-